Argued and submitted February 21, 2013, affirmed February 20, petition for review allowed October 2, 2014 (356 Or 397)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FERNANDO CLEMENTE-PEREZ,
*Defendant-Appellant.*

Washington County Circuit Court
D104733M; A147753

322 P3d 1082

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and De Muniz, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for unlawful possession of a firearm. ORS 166.250.[1] He assigns error to the trial court's denial of his motion for judgment of acquittal, arguing that there was insufficient evidence that he was within a vehicle when he possessed a firearm and, alternatively, that there was uncontroverted evidence that he was entitled to possess the firearm because it was in his place of residence. We affirm.

In reviewing a denial of a motion for judgment of acquittal, we state the facts in the light most favorable to the state and review those facts to determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

Defendant retrieved a handgun from a truck that was parked on his property and used it to shoot his wife's cell phone. The truck was parked near defendant's house under a stand-alone awning structure. The awning was located a few feet from the garage, on the side of the driveway to the garage that was away from the house. After defendant shot his wife's cell phone, he wrapped the gun in a towel and put it into a storage compartment under the rear seat of the truck on the driver's side. Defendant's truck has a rear door on the driver's side. Although the storage compartment has a lock, defendant did not lock it when he returned the gun.

Defendant was charged with unlawful possession of a firearm. At the close of the state's case, defendant moved for a judgment of acquittal. The trial court denied the motion, and the jury returned a verdict of guilty.

ORS 166.250 provides, as pertinent:

"(1)   Except as otherwise provided in this section * * *, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a)   Carries any firearm concealed upon the person;

---

[1] Defendant was also convicted of second-degree criminal mischief, ORS 164.354, but does not challenge that conviction.

"(b)   Possesses a handgun that is concealed and readily accessible to the person within any vehicle; * * *

"* * * * *

"(2)   This section does not prohibit:

"* * * * *

"(b)   Any citizen of the United States * * * from owning, possessing or keeping within the person's place of residence or place of business any handgun, and no permit or license to purchase, own, possess or keep any such firearm at the person's place of residence or place of business is required of any such citizen. As used in this subsection, 'residence' includes a recreational vehicle while used, for whatever period of time, as residential quarters.

"* * * * *

"(4)(a)   Except as provided in paragraph[] (b) * * * of this subsection, a handgun is readily accessible within the meaning of this section if the handgun is within the passenger compartment of the vehicle.

"(b)   If a vehicle * * * has no storage location that is outside the passenger compartment of the vehicle, a handgun is not readily accessible within the meaning of this section if:

"(A)   The handgun is stored in a closed and locked glove compartment, center console or other container; and

"(B)   The key is not inserted into the lock, if the glove compartment, center console or other container unlocks with a key."

On appeal, defendant first contends that the trial court should have granted his motion for judgment of acquittal because the state failed to prove that the handgun was "readily accessible to [him] within any vehicle." ORS 166.250(1)(b). In defendant's view, the statute requires proof that he was "within" the truck when he possessed the gun. He contends that there was no evidence that he drove or even sat in the truck when the gun was in it and, hence, the state failed to prove that he possessed a gun when he was within the truck.

The state raises three alternative responses: that defendant failed to preserve this claim of error, that there was sufficient evidence to allow a reasonable juror to find that defendant was in the truck when he returned and replaced the gun, and that ORS 166.250(1)(b) does not require proof that a defendant be "within" the vehicle with the gun. We agree with the state that defendant did not preserve this claim of error and accordingly do not address the state's other arguments.

To adequately preserve a challenge to the sufficiency of the evidence, a motion for judgment of acquittal "must state the specific theory on which the state's proof was insufficient." *State v. Paragon*, 195 Or App 265, 268, 97 P3d 691 (2004). One of the reasons for the preservation requirement is to minimize reversals in circumstances in which the trial court was not sufficiently alerted to an argument; to that end, it is incumbent on parties to provide the trial court with an explanation of their arguments that are specific enough to ensure that the court can identify and avoid possible error on the asserted grounds. *See State v. Wyatt*, 331 Or 335, 342, 15 P3d 22 (2000).

Defendant contends that he preserved the claim of error raised in his first argument on appeal when he argued "that the unlawful possession of a firearm statute was intended to criminalize the carrying of a concealed weapon in a car that was being driven, not one that was parked on the owner's property." Defendant did argue to the trial court that the statute requires that the vehicle is being driven or is on a public highway or premises, not just parked on the person's property. However, reading that statement in context, defendant's counsel and the trial court discussed that argument as a component of defendant's argument that he met the "place of residence" exception because there was no evidence that the gun ever left his property:

> "DEFENSE: [U]nder the statute, it's whether or not the firearm is readily accessible, and I know that [the state] was quoting a section that * * * says a handgun is readily accessible within the meaning of the section if the handgun is within the passenger * * * compartment of the vehicle, that's [ORS] 166.250(4)(a). However, (4)(b) then says if a

vehicle has no storage location that is outside the passenger compartment of the vehicle, which we have ample evidence that that is so, this is a truck, there's no trunk of the truck to put anything in, it then says a handgun is not readily accessible—and it's not saying that these are the only ways that this cannot be found readily accessible, but it gives certain things, if for example it says, it's not readily accessible within the meaning of this section if the handgun is stored in a closed and locked glove compartment or center console or container.

"First * * *, I believe this statute is contemplating that this car is being driven or that it is out on some kind of public highway or road open to the public, a public premises, not just somebody's car on their property and—

"COURT: Well, let's talk about that for a minute because I've been thinking about that and where is the authority for that? Where is the case that says that this has to be on—

"DEFENSE: I honestly don't know that it's ever been charged when it's not been on—when it's been on somebody's property before.

"* * * * *

"[E]very case that I came across was somebody driving a vehicle or they were parked in an open parking lot. I don't know there's a case regarding this where a car is in a garage, whereas that gun would be legally possessed if it was in a toolbox in a garage, but the minute that toolbox was put in their car in the garage that became illegal under the statute.

"COURT: Well, I think if the garage is attached to the house and the car's inside the garage and the gun is inside the car, that's probably still okay because it's part of the residence."

Defense counsel and the trial judge then discussed the layout of defendant's property, the lack of evidence that the gun ever left the property, *State v. Leslie*, 204 Or App 715, 723, 132 P3d 37, *rev den*, 341 Or 245 (2006) (in which, as discussed below, we construed the phrase "place of residence" as used in ORS 166.250(2)(b)), and other issues related to the argument that defendant possessed the gun within the terms of the "place of residence" exception.

Defendant acknowledges that the trial court "did not expressly address defendant's argument that the legislature did not intend to criminalize possessing a concealed weapon in a parked, unoccupied car when the weapon would not be accessible to the driver." The reason that the trial court did not address that argument is that the court reasonably did not understand defendant to have made it. The trial court fairly understood that defendant was raising arguments that (1) he was entitled to a judgment of acquittal under the "place of residence" exception in ORS 166.250(2)(b)—the contention raised in defendant's second argument on appeal—and (2) he was entitled to a judgment of acquittal because the state had failed to prove that the gun was "readily accessible" under ORS 166.250(1)(b) given its location behind the driver's seat in a compartment under the rear seat. Neither of those arguments alerted the trial court that defendant contended that ORS 166.250(1)(b) requires proof that a person be within a vehicle when he possesses a handgun. Because that claim of error was not preserved, we do not address it further.

Defendant next contends that the trial court should have granted his motion for judgment of acquittal because there was uncontroverted evidence that he met the "place of residence" exception in ORS 166.250(2)(b). ORS 166.250(2)(b) expressly allows the possession of a concealed handgun "within [a] person's place of residence" and excuses the need for a permit or license to "keep any such firearm at the person's place of residence." Before the trial court, defendant contended that a person's "place of residence" includes a vehicle parked in the driveway of the person's house. Here, at all times pertinent to this case, defendant's truck was parked under the awning near his driveway and never left his property. Accordingly, defendant argued, because there was uncontroverted evidence that the gun was within his place of residence, he was not prohibited from possessing the firearm at issue in this case and was entitled to a judgment of acquittal. The state responded that, as we concluded in *Leslie*, 204 Or App at 723, "place of residence" as used in ORS 166.250(2)(b) means the place where a person actually lives, *i.e.*, where she or he regularly eats, drinks, and sleeps. Because defendant here concedes that he did not eat or sleep

in his truck, the state argued that the truck is not his "place of residence" as defined in *Leslie*. Noting that it was "a really interesting issue," the trial court concluded that "residence" means where a person eats and sleeps, and because the truck was in a driveway-adjacent area and not inside the house or a place connected to the house, defendant's truck was not "within [defendant's] place of residence." The parties renew their contentions on the meaning of ORS 166.250(2)(b) on appeal.

When construing a statute, we examine the text of the statute in context along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *State v. Bassett*, 243 Or App 289, 294, 259 P3d 953 (2011).

We have construed the "place of residence" exception in ORS 166.250(2)(b) in two cases: *Leslie* and *State v. Wolf*, 260 Or App 414, 317 P3d 377 (2013).[2] In *Leslie*, the defendant owned a pickup truck with a canopy cover. At the time of his arrest, the defendant had been living in the truck for several years. He considered it to be his home, and he normally ate, slept, and studied for his college courses there. The defendant was arrested after a police officer discovered several concealed handguns in the truck and confirmed that defendant did not have a concealed handgun license. The defendant contended that the truck was his "place of residence" under ORS 166.250(2)(b) and so he was entitled to possess a handgun there. The state contended that the "place of residence" exception should apply only to fixed and permanent structures.

Because the "place of residence" exception was enacted in 1925, we consulted contemporaneous dictionaries to determine the plain meaning of the term. According to those sources, "residence," as used in the 1920s, had two distinct meanings—"legal residence" (personal presence in a fixed and permanent abode) and "actual residence" (the abode where one actually lives). In light of other textual clues, we concluded that, by "place of residence," the legislature intended to refer to actual residence, not legal residence.

---

[2] We decided *Wolf* after this case was briefed and argued.

We then considered the meaning of "actual residence." Contemporaneous sources consistently identified engaging in particular activities of daily life—sleeping, eating, and drinking—as the defining feature of a residence. Accordingly, we concluded that "place of residence" in ORS 166.250(2)(b) means "the place where a person actually lives, *i.e.*, where he or she regularly eats, drinks, and sleeps," even if that place is not a building or other structure. *Leslie*, 204 Or App at 723. Because it was undisputed that the defendant did, in fact, live in his truck, the truck was his "place of residence."

More recently, in *Wolf*, the defendant had rented a campsite at an established campground with the intention of staying about a week. The defendant's campsite was about 30 feet from each of three other campsites. There was a large stack of firewood between the defendant's campsite and one of the others, and there was a picnic table on at least one other campsite. The defendant had pitched a tent and made a pot of coffee at his campsite before the events that led to his arrest. The defendant was arrested after a conversation with a Forest Service officer in which the defendant admitted that he had a pistol in his pocket and that he did not have a concealed handgun license. The defendant contended that there was sufficient evidence from which to infer that he was within his "place of residence" when he possessed the handgun. The state argued that the legislature intended to permit individuals to possess concealed handguns only inside the physical enclosure of their homes, which in that case would have been within the defendant's tent.

Relying on and drawing from *Leslie*, we first noted that both the truck in *Leslie* and the tent in *Wolf* "are temporary structures in which daily living activities may be conducted and, therefore, both can function as a person's 'place of residence.'" *Wolf*, 260 Or App at 423. The question that remained to be addressed in *Wolf*, we observed, was whether areas outside of such structures also may be encompassed within a person's place of residence. As explained below, we concluded that the answer was yes, as long as there is evidence that the outdoor area could be considered to be within a defined "place" and that daily living activities would be conducted there.

To help answer the question posed in *Wolf*, we reviewed the limited available history of ORS 166.250(2)(b). *See* 260 Or App at 423-24 (discussing statute's history). The 1925 Legislative Assembly enacted the statute that created the "place of residence" exception to the general prohibition against the unlicensed carrying of concealed firearms. Because "any legislative history concerning the scope of ORS 166.250(2)(b) was lost in the 1935 State Capitol Building fire," any review of the history of that statute is limited to reviewing the historical development of statutes regulating the carrying of concealed weapons. *State v. Perry*, 165 Or App 342, 350, 996 P2d 995 (2000), *aff'd*, 336 Or 49, 77 P3d 313 (2003). The Supreme Court has summarized that history accordingly:

> "First, in 1885, the legislature imposed an outright ban on the carrying of concealed weapons by persons other than law enforcement officers. By later enactment, the legislature allowed for the carrying of concealed weapons on receiving a license. The 1925 statute created an exception to the general license requirement for persons in their place of residence or place of business. Those statutes, read together, reveal the intent of the legislature to carve out a limited and specific exception to the requirement of obtaining a license to carry a concealed weapon."

*State v. Perry*, 336 Or 49, 56, 77 P3d 313 (2003). On the one hand, as the *Perry* court noted, the legislature intended to carve out only "a limited and specific exception" to the license requirement for concealed weapons. But, on the other hand, the enactment of the place of residence exception reflects a legislative desire to allow people to possess concealed weapons in their homes, and "nothing in the text or available history of ORS 166.250(2)(b) suggest[s] that the legislature did not also intend to extend that statutory right to the outdoor living areas of people's homes." *Wolf*, 260 Or App at 424. Also, in light of other statutes extant in 1925, it is apparent that the legislature of that time knew how to, and sometimes did, enact statutes limited to acts that take place inside residential or other structures when it intended the laws to apply only in those structures. *Id.* at 425. The legislature could have worded ORS 166.250(2) similarly to those statutes—indicating that its application was limited

to acts inside structures—but it did not. Instead, the legislature employed a "functional" term that refers to the place where a person actually conducts daily living activities. *Id.*

We concluded in *Wolf* that, if outdoor areas form part of the "place" in which a person "actually lives"—that is, areas that are themselves regularly used for daily living activities—they are part of the person's place of residence. *Id.* at 423, 425. Accordingly, we examined the record to see if it included sufficient evidence from which to conclude that (1) the defendant's campsite, including its outdoor areas, could be thought of as part of a "place" and (2) the defendant would have regularly engaged in daily living activities within those outdoor areas. We concluded that there was sufficient evidence to establish that the campsite was a "place" because it covered a relatively small, defined area in an established campground about 30 feet away from other campsites. We further concluded that there was sufficient evidence to support an inference that the defendant would have engaged in daily living activities within the outdoor areas of his campsite based on the following evidence: the defendant's testimony that he intended to stay at the campsite for a week; the presence of a large stack of firewood between the defendant's campsite and one of the others, from which could be inferred that fire pits or rings were available in the defendant's campsite; the presence of a picnic table on at least one other campsite, from which could be inferred that some sort of outside seating was available at defendant's campsite; and the defendant's testimony that he had made a pot of coffee before the officers arrived, which jurors reasonably could have inferred the defendant had done in the outdoor areas of his campsite. *Id.* at 426.

Thus, "place of residence" as used in ORS 166.250(2)(b) can encompass temporary structures and outdoor areas adjacent to temporary structures if those temporary structures or outdoor areas are used for daily living activities. As we emphasized in *Leslie*, at the time the "place of residence" exception was adopted, it referred to one's actual, not legal, residence, and the feature that defined one's actual residence was engaging in daily living activities—specifically eating, drinking, and sleeping—in that place. And, as we explained in *Wolf*, the legislature chose not to use a term limited to

places with certain *physical characteristics—viz.*, contained within certain structures—but instead the legislature used a term that focuses on the *functional use* of the place—*viz.*, for daily living activities.

Applying those principles here, there is no dispute that the truck—as located under the awning structure on an unpaved strip adjacent to a driveway in front of defendant's garage—was within a defined "place." The dispute is whether that place was within defendant's place of residence. In this case, unlike in *Leslie*, defendant does not contend that the truck itself *is* his place of residence. Rather, he contends that his place of residence *includes* the truck because it was parked in close proximity to defendant's house.[3] And, unlike in *Wolf*, defendant here does not contend that the awning structure was part of his place of residence *because he engaged in daily living activities* within that structure; he depends only upon the proximity of the awning structure to his house. Thus, defendant would have us focus on the characteristics of the place—its proximity to a residential structure—not the functional use of the place.

As we explained in *Leslie* and in *Wolf*, that focus is not what the 1925 Legislative Assembly intended. Without evidence that a person uses a place for daily living activities (or evidence that could support an inference that a person uses a place for daily living activities), the place lacks the functional characteristics that that legislature would have understood made it the kind of "actual residence" to which the place of residence exception applies.[4] Defendant presented no evidence on the purpose of the awning structure, its fundamental relationship with the house, or the amount of time he spent within that structure. As defendant does not argue that he used the area in which the truck was located for daily living activities, it was not his place of residence for purposes of ORS 166.250(2)(b). There was evidence from

---

[3] The parties do not dispute that defendant engaged in activities of daily living in his house, and so the house would be his "place of residence."

[4] To the extent that defendant can be understood to argue that the truck was part of his place of residence because it was located on property that he owned—and thus part of his legal residence—we would reject that argument. As we explained in *Leslie*, the legislature intended to refer to actual, not legal, residence when it used the term "place of residence" in ORS 166.250(2)(b).

which the jury could find beyond a reasonable doubt that the truck and awning structure was not defendant's "place of residence." Accordingly, he was not entitled to a judgment of acquittal on that basis.

Affirmed.