No. 36 September 17, 2015 745

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON
*Respondent on Review,*

*v.*

FERNANDO CLEMENTE-PEREZ,
*Petitioner on Review.*

(CC D104733M; CA A147753; SC S062407)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 10, 2015, at Lewis & Clark Law School, Portland, Oregon.

Daniel C. Bennett, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jona J. Maukonen, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

BALDWIN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

Walters, J., dissented and filed an opinion, in which Brewer J., joined.

_____

* On appeal from Washington County Circuit Court, Rick Knapp, Judge. 261 Or App 146, 322 P3d 1082 (2014).

**BALDWIN, J.**

In this criminal case, defendant was convicted of unlawful possession of a firearm. ORS 166.250. At the close of the state's case, defendant moved for judgment of acquittal, arguing that the state had not presented sufficient evidence that he had "[p]ossesse[d] a handgun that is concealed and readily accessible to the person within any vehicle," within the meaning of ORS 166.250(1)(b). Alternatively, defendant argued that he qualified for an exception under ORS 166.250(2)(b), which provides that a person may possess a handgun at the person's "place of residence." The trial court rejected those arguments, and a jury found defendant guilty. The Court of Appeals affirmed, concluding that defendant failed to preserve his argument that he had not been "within any vehicle" at the time that he possessed a handgun, and that he did not meet the "place of residence" exception.[1] *State v. Clemente-Perez*, 261 Or App

---

[1] ORS 166.250 provides, in part:

"(1) Except as otherwise provided in this section ***, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"*****

"(b) Possesses a handgun that is concealed and readily accessible to the person within any vehicle; ***

"*****

"(2) This section does not prohibit:

"*****

"(b) Any citizen of the United States *** from owning, possessing or keeping within the person's place of residence or place of business any handgun, and no permit or license to purchase, own, possess or keep any such firearm at the person's place of residence or place of business is required of any such citizen. As used in this subsection, 'residence' includes a recreational vessel or recreational vehicle while used, for whatever period of time, as residential quarters.

"*****

"(4)(a) Except as provided in paragraph[] (b) *** of this subsection, a handgun is readily accessible within the meaning of this section if the handgun is within the passenger compartment of the vehicle.

"(b) If a vehicle *** has no storage location that is outside the passenger compartment of the vehicle, a handgun is not readily accessible within the meaning of this section if:

"(A) The handgun is stored in a closed and locked glove compartment, center console or other container; and

"(B) The key is not inserted into the lock, if the glove compartment, center console or other container unlocks with a key."

146, 322 P3d 1082 (2014). We allowed review, and, for the reasons explained below, we affirm.

## I. BACKGROUND

In reviewing a denial of a motion for judgment of acquittal, we describe the pertinent facts and all reasonable inferences that may be drawn from those facts in the light most favorable to the state. *State v. Walker*, 356 Or 4, 6, 333 P3d 316 (2014). In this case, defendant's son and estranged wife went to defendant's house to pick up his son's backpack before school. While defendant's wife and son were at his house, defendant heard his wife's cell phone ring from inside her car. Defendant retrieved her cell phone and saw that another man had called. Angered, he went to his pickup truck, which was parked under a stand-alone awning structure adjacent to the driveway of his house. He took out a handgun from inside an unlocked storage compartment underneath the back seat of the truck. He then walked to the backyard and shot his wife's cell phone, destroying it. Afterward, he wrapped the gun in a towel and put it back in the storage compartment underneath the back seat of his truck. He then got into a different pickup truck and drove away.

The state charged defendant with unlawful possession of a firearm, ORS 166.250, and second-degree criminal mischief, ORS 164.354.[2] After the state presented its case-in-chief, defendant moved for judgment of acquittal on both counts. The trial court denied the motion, and a jury found defendant guilty of both charges.

Defendant appealed his conviction for unlawful possession of a firearm only, assigning error to the trial court's denial of his motion for judgment of acquittal. He argued, first, that the state had not presented sufficient evidence to prove that he had been "within" his truck, within the meaning of ORS 166.250(1)(b). Second, he argued that, even if the state had presented sufficient evidence to support a conviction under ORS 166.250(1)(b), he nevertheless was entitled

---

[2] ORS 164.354 provides that a person commits the crime of second-degree criminal mischief if, "[h]aving no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages property of another." ORS 164.354(1)(b).

to judgment of acquittal because he met the "place of residence" exception provided in ORS 166.250(2)(b).

Defendant acknowledged on appeal that the trial court "did not expressly address [his] argument that the legislature did not intend to criminalize possessing a concealed weapon in a parked, unoccupied car when the weapon would not be accessible to the driver." The Court of Appeals agreed with that assessment, concluding that the trial court reasonably had not understood defendant to have made such an argument:

> "The trial court fairly understood that defendant was raising arguments that (1) he was entitled to a judgment of acquittal under the 'place of residence' exception in ORS 166.250(2)(b)—the contention raised in defendant's second argument on appeal—and (2) he was entitled to a judgment of acquittal because the state had failed to prove that the gun was 'readily accessible' under ORS 166.250(1)(b) given its location behind the driver's seat in a compartment under the rear seat. Neither of those arguments alerted the trial court that defendant contended that ORS 166.250(1)(b) requires proof that a person be within a vehicle when he possesses a handgun."

*Clemente-Perez*, 261 Or App at 152. The Court of Appeals concluded that defendant had failed to preserve his argument that he had not been "within" his truck for purposes of ORS 166.250(1)(b), and therefore did not address that argument further. *Id.*

The court rejected defendant's remaining argument that he qualified for the "place of residence" exception as provided in ORS 166.250(2)(b). *Id.* at 152-58. The court noted that it had interpreted the "place of residence" exception in two prior cases: *State v. Leslie*, 204 Or App 715, 132 P3d 37, *rev den*, 341 Or 245 (2006); and *State v. Wolf*, 260 Or App 414, 317 P3d 377 (2013). In *Leslie*, the court interpreted the phrase "place of residence" to mean "the place where a person actually lives, *i.e.*, where he or she regularly eats, drinks, and sleeps." 204 Or App at 723 (holding that the defendant's truck was his "place of residence," because the defendant actually lived in his truck). In *Wolf*, the court concluded that areas outside of a person's residential structure could be considered part of the person's "place of residence,"

as long as there is evidence that the outdoor area is within a defined "place" and as long as daily living activities are conducted there. 260 Or App at 423-26 (holding that sufficient evidence existed from which a rational factfinder could find that defendant's campsite was his "place of residence"). Applying the principles established in *Leslie* and *Wolf*, the Court of Appeals concluded that defendant had failed to present any evidence that he used the area in which his truck was located for daily living activities. *Clemente-Perez*, 261 Or App at 157. The court therefore determined that defendant did not meet the "place of residence" exception and was not entitled to judgment of acquittal on that basis. *Id.* at 157-58.

On review, defendant contends that (1) the state did not present sufficient evidence to support his conviction under ORS 166.250(1)(b), because a person is not "within any vehicle" for purposes of that statute unless the person occupies the vehicle, and (2) even if sufficient evidence existed to support a conviction under ORS 166.250(1)(b), he was nevertheless entitled to judgment of acquittal under the "place of residence" exception as provided in ORS 166.250(2)(b).

## II. ANALYSIS

### A. *Preservation*

Before we address the parties' substantive arguments, however, we must first determine whether defendant adequately preserved his argument under ORS 166.250(1)(b) that he was not within his pickup truck at the time that he possessed a handgun. As noted, the Court of Appeals concluded that defendant had failed to preserve that argument. *Clemente-Perez*, 261 Or App at 152. In the court's view, defendant had made only two arguments in the trial court regarding his entitlement to judgment of acquittal on the unlawful possession count: (1) that he met the "place of residence" exception; and (2) that the handgun had not been "readily accessible" under ORS 166.250(1)(b) given its location underneath the backseat of the truck. *Id.* at 150-52. Our review of the record, however, indicates that defendant did, in fact, make a third argument, calling into question the sufficiency of the evidence that he had been

"within any vehicle" when he possessed the handgun. ORS 166.250(1)(b).

Defendant began his argument on his motion by stating, "I'm hoping to organize this in a fashion, first I believe this statute is contemplating that this *car is being driven* or that it is out on some kind of public highway or road open to the public, a public premises, not just some-body's car on their property and—." (Emphasis added.) The trial court interjected, engaging defendant in a lengthy dis-cussion about the "place of residence" exception. Defendant later attempted to return to his argument regarding ORS 166.250(1)(b), stating that "we have that this readily acces-sible, * * * it's contemplating that *somebody's in the car* readily accessible, it's not just that somebody can approach the car and readily access this gun[.]" (Emphasis added.) At that point, the court told defendant, "You know I can tell you right now I'm going to deny your motion based on readily accessible because I think it's really a question of fact for the jury." Defendant persevered, however, pointing out that

> "the statute does specifically say that [the handgun] must be readily accessible to a person within the vehicle. We have *someone who's never driving the vehicle[,] he just approaches it and leaves it*[.] [U]nder this State's interpre-tation the trunk is readily accessible. Everything's readily accessible because you're just walking up to a stopped car on your personal property."

(Emphasis added.)

Further, defendant argued that, under ORS 166.250(1)(b), "readily accessible within a vehicle to the person has [the] understanding that they have to be able to access it *while they're within the vehicle*, not that they can just approach a vehicle." (Emphasis added.) The court replied, "[M]y point is that you can also visualize a scenario where * * * a person is driving the truck and he stops and pushes the seat forward and gets in the backseat and does all that and *they're within the vehicle*." (Emphasis added.) Ultimately, the court denied the motion, determining that, "with regard to readily accessible, * * * there's enough infor-mation for it to go to the jury."

As a general rule, appellate courts will not consider claims of error that were not raised in the trial court. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000); *see* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]"). To adequately preserve an issue, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Wyatt*, 331 Or at 343. This court has explained that the primary purposes of the preservation rule are to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). This court also has cautioned, however, that problems "may arise if the preservation onion is sliced too thinly." *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004). Thus, the question whether an argument has been preserved "inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the [preservation] rule have been sufficiently served." *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009).

We conclude that our preservation policies have been served in this case. Defendant noted at the beginning of his motion for judgment of acquittal that he "hop[ed] to organize" his motion to cover each of his arguments. In light of the questions that the trial court asked, however, defendant spent the bulk of his time addressing the "place of residence" exception and did not elaborate on his argument regarding ORS 166.250(1)(b). *See State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011) (noting that "the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments"). Indeed, the court expressly informed defendant that it would deny any motion based on the "readily accessible" provision of the statute—of which the phrase "within any vehicle" is a part—because the court believed that the jury should decide that question. Despite the court's indication that it was unwilling to entertain defendant's

argument that the handgun had not been "readily accessible to the person within any vehicle," defendant persevered in making that argument. He argued, for example, that ORS 166.250(1)(b) requires that a person be "*driving* the vehicle"; "*in* the car"; and that the person must be able to access the handgun "while [the person is] *within* the vehicle, not that [the person] can just approach a vehicle." (Emphases added.)

We think those arguments sufficed to alert the trial court to defendant's argument that ORS 166.250(1)(b) requires a person to be within a vehicle at the time that he or she possesses a concealed, readily accessible handgun. Although defendant may not have presented his argument with perfect clarity, we conclude that he provided sufficient information to enable the prosecutor to respond and for the trial court to consider the argument and correct any error.[3] *See Walker*, 350 Or at 550 ("The fact that the level of detail or thoroughness with which a party articulates a position may leave something to be desired does not mean that it was insufficient to serve the rule of preservation's pragmatic purposes.").

B.  *Possession of Handgun "Within" a Vehicle*

Having concluded that defendant adequately preserved his argument under ORS 166.250(1)(b) that he had not been "within" a vehicle, we now turn to the merits of that argument. Whether defendant possessed a concealed handgun that was "readily accessible to the person within any vehicle" within the meaning of ORS 166.250(1)(b) is a question of statutory interpretation. We therefore apply our familiar interpretive methodology, examining the statute's text, context, and relevant legislative history, as well as any applicable maxims of statutory construction, to determine the legislature's intent in enacting ORS 166.250(1)(b). *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

---

[3] Indeed, even though the trial court did not expressly address defendant's argument, the court hypothesized "a scenario where *** a person is driving the truck and he stops and pushes the seat forward and gets in the backseat and does all that and *they're within the vehicle*." (Emphasis added.) Thus, the court at least arguably considered, and rejected, defendant's argument that his conduct in reaching under the back seat to retrieve the handgun did not constitute being "within" the truck.

We begin with the text of ORS 166.250(1)(b), which provides in part:

"(1)   Except as otherwise provided in this section * * *, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(b)   Possesses a handgun that is concealed and readily accessible to the person within any vehicle[.]"

Initially, the parties dispute whether the phrase "within any vehicle" refers to the "handgun" or to the "person." Defendant argues that "within any vehicle" refers to the "person." In his view, a person does not violate the statute unless he or she is within a vehicle at the time that he or she possesses a concealed and readily accessible handgun. The state, by contrast, contends that "within any vehicle" modifies the term "handgun," and that a person need not be within a vehicle to violate the statute. In deciding between those competing grammatical interpretations, we seek guidance from applicable canons of statutory construction. *See PGE*, 317 Or at 611 ("In trying to ascertain the meaning of a statutory provision, and thereby to inform the court's inquiry into legislative intent, the court considers rules of construction of the statutory text that bear directly on how to read the text."). In particular, two rules of construction guide our analysis here: the doctrine of the last antecedent and the rule against surplusage.

The doctrine of the last antecedent provides that "'[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'" *State v. Webb*, 324 Or 380, 386, 927 P2d 79 (1996) (internal quotation marks omitted) (quoting Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.33, 270 (5th ed 1992)). In ORS 166.250(1)(b), the word "person" immediately precedes—and is therefore the last antecedent of—the phrase "within any vehicle." Thus, according to the doctrine of the last antecedent, the phrase "within any vehicle" refers to "person," unless such a construction would impair the meaning of the sentence. The state has not

argued that construing "within any vehicle" to modify "person" would impair the meaning of the sentence, and we do not perceive any such impairment.

As a general rule, we also assume that the legislature did not intend any portion of its enactments to be meaningless surplusage. *See* ORS 174.010 (instructing courts to construe statutes so as to "give effect to all" provisions); *Arken v. City of Portland*, 351 Or 113, 156, 263 P3d 975 (2011) (noting "cardinal rule of statutory construction to give significance and effect to every part of a statute" and "well-established principle to avoid interpretations of statutes that render portions of them redundant"); *Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006) (rejecting construction that would relegate portion of statute to surplusage, "in contravention of this court's stated goal of giving effect to every provision of a statute") (internal quotation marks omitted). We note that the state's interpretation of ORS 166.250(1)(b) would render the phrase "within any vehicle" redundant. As the state points out, ORS 166.250(4)(a) provides that a handgun is "readily accessible" within the meaning of the unlawful possession statute if the handgun is "within the passenger compartment of the vehicle." ORS 166.250(4)(a). The state argues that subsection (4)(a) indicates that the legislature, in prescribing the crime of unlawful possession of a firearm, was concerned with specifying the location of the handgun, not the defendant. In our view, however, subsection (4)(a) cuts the other way. Subsection (4)(a) defines "readily accessible" to mean that, apart from certain enumerated exceptions, the handgun is "within the passenger compartment of the vehicle." Thus, the phrase "readily accessible" as used in ORS 166.250(1)(b) already indicates that the handgun is within the vehicle—specifically, within the passenger compartment of the vehicle. To interpret the phrase "within any vehicle" to once again specify that the handgun is within the vehicle, as the state suggests, would render that phrase redundant. We decline to adopt such an interpretation. Rather, we conclude that the phrase "within any vehicle" modifies the term "person." Accordingly, to violate ORS 166.250(1)(b), a person must be within a vehicle at the time that the person knowingly possesses a concealed and readily accessible handgun.

The question before us, then, is whether a rational factfinder could have found, beyond a reasonable doubt, that defendant was "within any vehicle," as that phrase is used in ORS 166.250(1)(b). *See State v. King*, 307 Or 332, 339, 768 P2d 391 (1989) ("In ruling on the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Defendant and the dissent contend that a person is not "within any vehicle" unless he or she occupies the vehicle as a driver or passenger.[4] From their perspective, a person is not within a vehicle unless the person is sitting in or otherwise has his or her entire body inside the passenger compartment of the vehicle. The state contends that extending even a portion of one's body inside a vehicle may suffice.

Where, as here, the legislature has not defined a particular term, we assume that the legislature intended to give words of common usage their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. *Webster's Third New International Dictionary* defines "within" as

"(1)**:** in the inner or interior part of **:** INSIDE OF * * *
(2)**:** in the limits or compass of **:** not beyond * * * **:** enclosed or confined by[.]"

*Id.* at 2627 (unabridged ed 2002). Some of those definitions appear to support the state's position, while others appear to support that of defendant and the dissent. For example, the definition "in the inner or interior part of" is consistent with the state's contention that, once a person reaches beyond the exterior and into the interior of a vehicle, that person is "within"—*i.e.*, in the inner part of—the vehicle. On the other hand, the definition "enclosed or confined by" would seem to suggest full enclosure of a person's body within a vehicle, as defendant and the dissent assert. Because ORS 166.250(1)(b)

---

[4] *Webster's Third New International Dictionary* 1561 (unabridged ed 2002) defines "occupy" in this context as "to fill up (a place or extent)." Although defendant does not provide a definition for the word "occupy," he appears to use the term to mean to sit in, or otherwise be fully inside, a vehicle. Specifically, he argues that "the legislature was concerned with occupants of cars, drivers and passengers, having ready access to concealed weapons in public, not storing weapons in parked cars."

could plausibly support either definition, the statute is at least ambiguous. We therefore look to the statute's context to determine which of those plausible interpretations was the one that the legislature most likely intended. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used.").

Context includes, among other things, other provisions of the statute at issue. *Force v. Dept. of Rev.*, 350 Or 179, 188, 252 P3d 306 (2011). In particular, defendant raises two contextual arguments regarding ORS 166.250(4), which provides, in part:

"(a)   Except as provided in paragraph[] (b) *** of this subsection, a handgun is readily accessible within the meaning of this section if the handgun is within the passenger compartment of the vehicle.

"(b)   If a vehicle *** has no storage location that is outside the passenger compartment of the vehicle, a handgun is not readily accessible within the meaning of this section if:

"(A)   The handgun is stored in a closed and locked glove compartment, center console or other container; and

"(B)   The key is not inserted into the lock, if the glove compartment, center console or other container unlocks with a key."

First, defendant points out that the legislature defined "readily accessible" for purposes of ORS 166.250 to mean that the handgun is "within the passenger compartment of the vehicle." He argues that such a definition "makes sense only if the statute is targeting possession of concealed weapons by people who are themselves in vehicles." In other words, for a handgun to be "readily accessible" to a person "within any vehicle," defendant contends that both the handgun and the person must be within the passenger compartment of the vehicle. We do not disagree. However, defendant's argument does not answer the question we must decide in this case—whether putting some, but not all, of a person's body inside the passenger compartment of a vehicle is sufficient for a person to be "within" the vehicle.

Defendant advances a second argument, with which the dissent agrees, that interpreting "within" to include a portion of a person's body would create an inconsistency with ORS 166.250(4)(b). 357 Or at 773 (Walters, J., dissenting). That subsection provides that a handgun that would otherwise be deemed "readily accessible" will not be so deemed if the handgun is stored in a closed, locked container and the key is not inserted into the lock of that container. According to defendant and the dissent, if merely reaching into a vehicle is sufficient to make that person "within" the vehicle under ORS 166.250(1)(b), then no person could make use of the locked container exception in ORS 166.250(4)(b) without violating ORS 166.250(1)(b). They posit that, at the moment that a person were to reach into a vehicle and unlock the compartment, the person would be "within" the vehicle in violation of ORS 166.250(1)(b).

We note that the dissent's construction of the statute would not resolve that potential quandary. Even under the dissent's construction, a driver or passenger who was fully enclosed within a vehicle would run the same risk of violating the statute at the moment that he or she unlocked the relevant compartment. In any event, our response to that theoretical dilemma is that the legislature, in providing the locked-container exception, has exempted from prosecution certain conduct that would otherwise be proscribed by ORS 166.250(1)(b). Specifically, if a person locks a handgun inside a "glove compartment, center console or other container" within a vehicle, that handgun will not be considered "readily accessible" for purposes of ORS 166.250(1)(b). Thus, a person would not violate the statute under those circumstances.[5]

Finally, we consider the legislative history of ORS 166.250(1)(b) to discern the legislature's intended meaning

---

[5] The same reasoning applies to the other exceptions that the dissent mentions, such as the exceptions for going to and from a target range or to and from a hunting or fishing expedition. 357 Or 773 (Walters, J., dissenting). With respect to those exceptions as well, the legislature has exempted certain conduct that would otherwise be criminalized by ORS 166.250. Our interpretation of ORS 166.250(1)(b) does not affect those exemptions. If a person were to retrieve a firearm from a vehicle "while going to and from [established target] ranges," ORS 166.260(3)(a), or "while going to or returning from a hunting or fishing expedition," ORS 166.260(3)(b), then ORS 166.250 simply would not apply to that person.

of the phrase "within any vehicle." The legislature enacted the current version of ORS 166.250(1)(b) in 1999. Or Laws 1999, ch 1040, § 1. The legislative history of the 1999 amendments indicates that the legislature amended ORS 166.250 primarily in response to the Court of Appeals decision in *State v. Williams*, 161 Or App 111, 984 P2d 312 (1999). In that case, police officers pulled over a car and found a handgun underneath the front passenger seat, where the defendant had been sitting, and arrested the defendant for unlawful possession of a firearm. *Id.* at 113. At the time that *Williams* was decided, ORS 166.250(1)(b) provided that a person committed the crime of unlawful possession of a firearm if the person knowingly "[c]arrie[d] concealed and readily accessible to the person within any vehicle which is under the person's control or direction any handgun, without having a license to carry such firearm." ORS 166.250(1)(b) (1993). The Court of Appeals held that the police lacked probable cause to arrest the defendant for carrying a concealed weapon within a vehicle, in violation of ORS 166.250, because there was no evidence that the defendant had "control or direction" of the vehicle. 161 Or App at 118.

The legislature responded in two ways. First, the legislature eliminated the requirement that a vehicle be "under the person's control or direction," thereby ensuring that ORS 166.250 would apply to passengers as well as drivers. *See* Tape Recording, Senate Committee on Judiciary, HB 3374, June 30, 1999, Tape 261, Side A (statement of Assistant Attorney General David Amesbury) ("The problem in *Williams* was we had the passenger with the concealed handgun, but he wasn't in control of the vehicle, so the statute didn't apply to him. So, under the current statute and *State [v.] Williams*, the passengers in a drive-by shooting situation, as long as they're not caught shooting, if they're just carrying the weapons concealed, the statute doesn't apply to them[.]"); Tape Recording, Senate Committee on Judiciary, HB 3374, June 30, 1999, Tape 261, Side A (statement of Marion County District Attorney Dale Penn) ("[HB 3374] is designed to deal with the problem of drive-by shootings that we have in a number of counties[.] *** [W]e are unable to prosecute passengers who are possessing the guns and using the guns unless we catch them in the act of shooting, and so

this change in the statute would allow us to prosecute passengers[.]"). Second, the legislature changed the term "carries" to "possesses" to address the situation in which a handgun is concealed and readily accessible to a person within a vehicle, despite the fact that the person is not physically carrying the handgun. *See* Tape Recording, Senate Committee on Judiciary, HB 3374, June 30, 1999, Tape 261, Side A (statement of Assistant Attorney General David Amesbury) (noting concern under prior version of statute that, "if somebody has [a handgun] under the floor mat or is sitting on it or [has it] shoved under the seat, perhaps he's not carrying it, so he still might not be affected by the statute").

Defendant and the dissent contend that the 1999 amendments to ORS 166.250(1)(b) show that the legislature intended the statute to apply exclusively to vehicle occupants—*i.e.*, drivers and passengers. However, we do not view the legislative history so narrowly. That history indicates that the legislature intended to broaden the scope of ORS 166.250(1)(b) to include persons within vehicles who do not drive or own the vehicle. Nothing in the legislative history, however, demonstrates an intent to restrict the scope of the statute to people who are sitting in or otherwise completely inside a vehicle. If the legislature had intended the statute to apply only to persons who "occupy" vehicles, it could have said so expressly. For example, the Model Penal Code and a handful of other state statutes pertaining to firearm regulation use some variation of the word "occupy" when describing a person's location with respect to a vehicle. The Model Penal Code establishes a presumption of criminal purpose if "a person possesses a firearm or other weapon on or about his person, in a vehicle *occupied* by him, or otherwise readily available for use." Model Penal Code § 5.06(2) (emphasis added). Similarly, the California Penal Code provides that a person is guilty of carrying a concealed firearm if the person "[c]auses to be carried concealed within any vehicle *in which the person is an occupant* any pistol, revolver, or other firearm capable of being concealed upon the person." Cal Penal Code § 25400(a)(3) (emphasis added); *see also* Conn Gen Stat § 29-38(a) (proscribing a person from "knowingly ha[ving], in any vehicle *owned, operated or occupied by such person*, any weapon, any pistol or revolver

for which a proper permit has not been issued") (emphasis added); *cf.* Ohio Rev Code § 2923.16(B) (providing that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to *the operator or any passenger* without leaving the vehicle") (emphasis added).[6]

In contrast, when the legislature enacted ORS 166.250(1)(b), it did not specify that a person must actually "occupy"—*i.e.*, "fill up" the space inside—a vehicle. As we have noted, the plain and ordinary meaning of "within"— which includes anything that is "in the inner or interior part of" something else—is broader than "occupies." Moreover, nothing in the text, context, or legislative history of ORS 166.250(1)(b) indicates that the legislature intended to limit the scope of the term "within" to be synonymous with "occupies." We will not read such an unwritten limitation into the statute. *See* ORS 174.010 (providing that courts shall not "insert what has been omitted" into a statute). We therefore conclude that a person violates ORS 166.250(1)(b) if the person, or some portion of the person's body, is in the interior part of a vehicle at the time that he or she possesses a concealed, readily accessible handgun.[7]

---

[6] Those statutes were enacted after the original enactment of ORS 166.250(1)(b) in 1925, and therefore do not indicate what the Oregon legislature had in mind at that time. They demonstrate, however, that a clear drafting path existed for limiting Oregon's unlawful possession statute to people who "occupy" vehicles, and the legislature did not take that path—either when the legislature originally enacted the statute or when it amended the statute in 1999. *Cf. State v. Walker*, 356 Or 4, 24, 333 P3d 316 (2014) (observing that post-enactment cases from other jurisdictions "still may be consulted for their persuasive value"); *Halperin v. Pitts*, 352 Or 482, 490-91, 287 P3d 1069 (2012) ("[T]his court not infrequently refers to later-enacted statutes for the purpose of demonstrating consistency (or inconsistency) in word usage over time as indirect evidence of what the enacting legislature most likely intended.").

[7] The dissent would conclude that, when the legislature amended ORS 166.250(1)(b) in 1999, the legislature simply intended to change a statute that applied to vehicle drivers to render it applicable to vehicle passengers. 357 Or 771 (Walters, J., dissenting). The dissent's conclusion, however, begs the question of when a driver or passenger is sufficiently "within" a vehicle. The dissent would answer that question by holding that every inch of a person's body must be enclosed by a vehicle before the statute will apply. Under the dissent's construction, a driver or passenger who, for example, rests his or her elbow outside the window would no longer be enclosed by the vehicle and therefore would not be "within" the vehicle for purposes of ORS 166.250(1)(b). We find no support in the statutory text, context, or history for ascribing such a narrow meaning to the word "within."

We further conclude that the state presented sufficient evidence from which a rational trier of fact, making reasonable inferences, could find beyond a reasonable doubt that at least some portion of defendant's body was in the interior part of his truck at the time that he possessed a concealed, readily accessible handgun. That evidence included the testimony of Deputy Brown, the county sheriff who arrested defendant. Brown testified that it was "kind of a process" to access the storage compartment underneath the back seat of defendant's truck, explaining that one needed to "[p]ull the whole seat forward towards the front of the pick-up." Also, defendant introduced photographs showing each step of the process of accessing the storage compartment. Those photographs indicate that a person must fold down the back seat, flip up the entire seat, and then open the lid of the compartment in the floor of the truck to access the storage compartment. Based on that evidence, a jury reasonably could infer that some portion—and indeed, likely a substantial portion—of defendant's body had been inside his truck when he took the handgun out of and later placed it back into the storage compartment. We therefore conclude that the trial court did not err in denying defendant's motion for judgment of acquittal on the theory that defendant had not been "within" the truck.

C.   *"Place of Residence" Exception*

We now turn to defendant's contention that he was nevertheless entitled to judgment of acquittal because he met the "place of residence" exception provided in ORS 166.250(2)(b). That exception provides:

> "Any citizen of the United States over the age of 18 years who resides in or is temporarily sojourning within this state *** [is not prohibited] from owning, possessing or keeping within the person's place of residence or place of business any handgun, and no permit or license to purchase, own, possess or keep any such firearm at the person's place of residence or place of business is required of any such citizen. As used in this subsection, 'residence' includes a recreational vessel or recreational vehicle while used, for whatever period of time, as residential quarters."

ORS 166.250(2)(b).

In defendant's view, the phrase "place of residence" refers to the entirety of a person's residential property—that is, a person may lawfully possess a handgun under ORS 166.250(2)(b) anywhere inside the property lines of his or her residential property. Alternatively, defendant argues that the legislature intended the "place of residence" exception to extend to all portions of a person's residential property that the person would consider to be private. He contends that the storage location of his handgun—inside his truck, parked under an awning adjacent to his driveway—was well within the private portion of his residential property and that he therefore met the "place of residence" exception.

The state, however, seeks a narrower interpretation. From the state's perspective, a person's "place of residence" is limited to the bounds of a person's residential structure. Accordingly, because defendant did not possess the handgun within his residential structure, he did not meet the exception for possessing a handgun within his "place of residence."

To determine what the legislature likely intended the phrase "place of residence" to mean, we examine the text, context, and any relevant legislative history. *Gaines*, 346 Or at 171-72. Unfortunately, any legislative history pertaining to the enactment of ORS 166.250(2)(b) in 1925 was lost in the 1935 State Capitol Building fire. *See State v. Perry*, 165 Or App 342, 350, 996 P2d 995 (2000), *aff'd*, 336 Or 49, 77 P3d 313 (2003). We therefore look to the statutory text and context, as well as any applicable maxims of statutory construction, to guide our inquiry into the intended meaning of "place of residence."

As previously mentioned, where the legislature does not provide a definition for a statutory term, we assume that the legislature intended the words in the statute to have their plain and ordinary meanings. *PGE*, 317 Or at 611. We consult dictionaries in use at the time of the legislature's enactment as an aid in interpreting the words of the statute. *State v. Perry*, 336 Or 49, 53, 77 P3d 313 (2003). In this case, we seek guidance from dictionaries in use around the time of the 1925 legislature's enactment of the "place of residence" exception.

The 1910 version of *Webster's New International Dictionary* defined "residence" as "[t]he place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode. \* \* \* The house where one's home is; a dwelling house." *Id.* at 1814. Legal dictionaries in use at the time provided similar definitions. *See, e.g.*, *Black's Law Dictionary* 1032 (1891) (defining "residence" as "[t]he place where a man makes his home, or where he dwells permanently or for an extended period of time"); John Bouvier & Francis Rawle, 3 *Bouvier's Law Dictionary and Concise Encyclopedia* 2920 (1914) ("residence" means "[p]ersonal presence in a fixed and permanent abode").

Because those sources defined "residence" as being synonymous with "abode," "dwelling," and "habitation," we consider the definitions of those words as well. A "place of abode" meant "[a] man's residence, where he lives with his family and sleeps at night." John Bouvier & William Edward Baldwin, *Baldwin's Century Edition of Bouvier's Law Dictionary* 27 (1926). Similarly, a "dwelling" was defined as the "place or house in which a person lives." *Webster's* (1910) at 687. And a "habitation" was defined as a "[p]lace of abode; settled dwelling; residence; house." *Id.* at 967. Although those definitions are somewhat circular, they generally refer to some type of residential structure—*i.e.*, a house, dwelling, or other habitation. Accordingly, a "residence," in the plain and ordinary sense of that word, refers to a structure in which a person lives.

We note, however, that the legislature not only used the term "residence," but rather the phrase "place of residence," in providing an exception to the general prohibition against carrying a concealed weapon. It is unclear whether the phrase "place of" broadens or narrows the limits of the term "residence." Indeed, *Black's* noted that the word "place \* \* \* is an indefinite term. It is applied to any locality, limited by boundaries, however large or small. \* \* \* The extent of the locality designated by it must generally be determined by the connection in which it is used." *Black's* at 899. *Webster's*, in contrast, defined a "place" with more particularity, *viz.*, "[a] building, part of a building, or other spot, set apart for a special purpose." *Webster's* (1910) at 1646. Reading the phrase "place of residence" as a whole, the term "place"

can be viewed as further describing (and limiting) the area excepted from the general provisions of ORS 166.250—that is, that one's "place of residence" is the particular structure set apart for residential purposes.

Of course, dictionaries are only the starting point for our textual analysis. We must consider the statutory words in context to determine which of multiple definitions is the one that the legislature intended. *See State v. Ziska/ Garza*, 355 Or 799, 805, 334 P3d 964 (2014) (noting that "resort to dictionaries does not reveal which sense the legislature had in mind" and that "we look to the terms of the statute and how the words in dispute are used in context").

The phrase "place of residence" appears twice in ORS 166.250(2)(b), preceded by two different prepositions. The legislature provided that a person is not prohibited from possessing a handgun "*within* the person's place of residence" and that a person need not have a permit or license to possess a handgun "*at* the person's place of residence." (Emphases added.) Unfortunately, "at" does little to elucidate the bounds of the phrase "place of residence." Indeed, *Webster's* noted that "at" is a less definite term than "in": "*At* emphasizes mere locality; *in* refers more to the interior of something or to the idea of inclusiveness." *Webster's* (1910) at 144 (emphasis in original). The term "within," on the other hand, helps to narrow the limits of the phrase "place of residence." *Webster's* defined "within" to mean "[i]n the inner or interior part of; inside of." *Id.* at 2344. Thus, the legislature's use of the term "within" in the phrase "within a person's place of residence" implies that a person's place of residence is some type of structure with a discrete interior.

Defendant contends, however, that the legislature's choice of the term "residence"—as opposed to terms such as "dwelling," "building," or "house"—indicates a legislative intent for the exception to apply more broadly than to a residential structure only. He argues that, had the legislature intended to circumscribe the exception to the bounds of a person's residential structure, the legislature could have used words that would clearly express such a limitation. For example, the legislature elsewhere specified that second-degree burglary must occur in a "building," ORS 164.215,

and that first-degree burglary may occur only in a "dwell-ing," ORS 164.225. *See, e.g., Ogle v. Nooth*, 355 Or 570, 584, 330 P3d 572 (2014) (considering "related statutes" as part of a statute's context). Defendant argues that the legislature knew how to refer to physical structures but did not do so, and therefore did not intend to do so, in ORS 166.250(2)(b). The problem with that argument, however, is that the plain meaning of a "residence" is a person's house, dwelling, or abode—all of which are residential structures. In other words, the synonyms commonly used to define "residence" at or near the time of enactment have the same meaning that defendant asserts that the legislature did not intend.

Further, the historical context of ORS 166.250 sup-ports an interpretation of the "place of residence" exception that is limited to residential structures. *See State v. Pipkin*, 354 Or 513, 526, 316 P3d 255 (2013) ("[W]e do not inter-pret text in isolation; we also consider the historical context against which that text was enacted."). This court, in *Perry*, described the historical background of ORS 166.250 and related statutes regulating the carrying of concealed weap-ons. 336 Or at 54-56. The interpretive question presented in that case was the scope of the other exception provided in ORS 166.250(2)(b)—the "place of business" exception. The court described the development of Oregon's concealed weapons statutes as follows:

> "First, in 1885, the legislature imposed an outright ban on the carrying of concealed weapons by persons other than law enforcement officers. By later enactment, the legislature allowed for the carrying of concealed weapons on receiving a license. The 1925 statute created an excep-tion to the general license requirement for persons in their place of residence or place of business. Those statutes, read together, reveal the intent of the legislature to carve out a *limited and specific exception* to the requirement of obtain-ing a license to carry a concealed weapon."

*Perry*, 336 Or at 56 (emphasis added). Given the limited nature of the "place of business" exception, the court rejected the defendant's argument that the exception should apply to non-owner employees, reasoning that "it is not likely that the legislature first would have banned nearly all unlicensed carrying of concealed weapons and then, only eight years

later, would create an exception for every person who had some kind of job—an exception so broad that it would swallow the general prohibition." *Id.* (internal quotation marks omitted). That same historical context informs our interpretation of the "place of residence" exception. For the reasons that this court articulated in *Perry*, we conclude that the legislature intended the "place of residence" exception to be a similarly "limited and specific exception."

Defendant nevertheless contends that the "place of residence" exception was intended merely to distinguish public from private property. If the legislature had wanted merely to prohibit carrying concealed weapons in public, however, it could have explicitly said so. Instead, the legislature created a blanket prohibition against carrying a concealed handgun without a license and carved out limited, specific exceptions for a person's residence and a person's place of business. Just as this court concluded in *Perry* that the defendant's proposed interpretation of "place of business" was too broad, we likewise conclude that defendant's proposed interpretation would impermissibly broaden the scope of the "place of residence" exception to include all of a person's private residential property.

Finally, we consider defendant's argument that the scope of the "place of residence" exception should be interpreted coextensively with preexisting Oregon common law regarding a person's right to use force to defend his or her home. *See State v. Ofodrinwa*, 353 Or 507, 512, 300 P3d 154 (2013) (context for interpreting statutory text includes preexisting common law). This court has described that common-law right, also known as the "castle doctrine," as follows:

> "A man's house is regarded as his castle, to which he may flee for safety and protection, and which affords him and his family a 'city of refuge'; and, if a person unlawfully intrude, the householder, after having warned him to depart, if he do not obey within a reasonable time, may employ sufficient force to expel him; but *the immunity pertaining to the defense of a habitation does not extend beyond the limits of the dwelling and the customary outbuildings.*"

*State v. Bartmess*, 33 Or 110, 129-30, 54 P 167 (1898) (emphasis added); *see State v. Brooks*, 79 SC 144, 60 SE 518, 520

(1908) (citing *Bartmess*, among other cases, for proposition that "[t]here is much reason and authority for holding that one within the curtilage of his dwelling is in fact and law within his dwelling").

As defendant points out, the common-law right to defend one's home extended to the "customary outbuildings" of a person's dwelling. In defendant's view, "[i]t would be incongruous if the legislature, without expressly saying so, intended to limit the location at which a person may carry or store a concealed weapon more strictly than where he or she may lawfully employ them in self-defense against another person."

We need not decide today, however, whether a customary outbuilding of a person's home might, under appropriate circumstances, be used for such domestic purposes and in such connection with the main residential structure as to be considered part of a person's "place of residence." *See State v. Lee*, 120 Or 643, 649, 253 P 533 (1927) (defining "curtilage" as "the space of ground adjoining the dwelling-house, used in connection therewith in the conduct of family affairs and for carrying on domestic purposes usually including the buildings occupied in connection with the dwelling-house"); *cf. State v. Dixson/Digby*, 307 Or 195, 210, 766 P2d 1015 (1988) (noting that, "although the common law unquestionably recognized the concept of 'curtilage,' it did so to enlarge the definition of a dwelling to encompass nearby structures used in conjunction with the dwelling, so that the invasion of any of them could constitute burglary"). In this case, the evidence was that defendant possessed a concealed and readily accessible handgun inside his pickup truck, which was parked under a stand-alone awning next to his driveway. There was no evidence that defendant's pickup truck, or the awning beneath which it was parked, could be considered a customary outbuilding of his house. Nor was there any evidence that defendant used the truck or the stand-alone awning for domestic purposes to such an extent that either should be considered part of the house.

### III.   CONCLUSION

In summary, we conclude that a person's "place of residence" for purposes of ORS 166.250(2)(b) is the house or

other structure in which a person lives—that is, a person's residential structure.[8] In this case, there was no evidence that defendant lived in his pickup truck or the area where the truck was parked. Accordingly, defendant did not meet the "place of residence" exception under ORS 166.250(2)(b).

Because we conclude that the state presented sufficient evidence from which a rational trier of fact could find that defendant was "within" his truck at the time that he possessed a concealed, readily accessible handgun, and that defendant did not meet the "place of residence" exception, the trial court did not err in denying defendant's motion for judgment of acquittal.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**WALTERS, J.,** dissenting.

I respectfully dissent. In my view, ORS 166.250(1)(b) applies to drivers and passengers who are located entirely inside a vehicle and not to those persons, like defendant, who reach into a vehicle to place a handgun in or remove a handgun from a concealed location.

Under ORS 166.250(1)(b), a person commits the crime of unlawful possession of a handgun if the person knowingly "[p]ossesses a handgun that is concealed and readily accessible to the person within any vehicle." Relying on the rule of the last antecedent, the majority concludes that the adjectival phrase "within any vehicle" modifies the immediately preceding noun—person—and acknowledges that that phrase also may modify another preceding noun—handgun. 357 Or at 755. The majority is correct in both respects. "[W]here the sense of the entire act requires that the qualifying words apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent." *Johnson v. Craddock*, 228 Or 308, 317, 365 P2d 89 (1961) (citing 2 *Sutherland, Statutory Construction* 448-49 (3d ed 1943); *see also* Norman J. Singer, 2A *Sutherland Statutory Construction* § 47:33 (7th ed 2008)

---

[8] As noted, we leave open the question whether, under other circumstances not present in this case, a person's use of an outbuilding might be so connected with the person's main residential structure as to be considered a part of it.

(stating the same principle as the 1943 edition). That is the circumstance here. Given that that statute's applicability depends on a handgun being "readily accessible," and that a handgun is "readily accessible" when it is within the passenger compartment of a vehicle, ORS 166.250(4)(a), the phrase "within a vehicle" should be understood to modify "handgun" as well as "person."

That understanding is of assistance in resolving the questions that the majority poses: What is the meaning of the word "within"? Does the statute apply only when a person is located entirely inside a vehicle, or does it also apply when a "substantial portion" of a person's body is so located? When modifying "handgun," the word "within" must mean entirely inside the passenger compartment of the vehicle. The reason is that, for the statute to apply, the handgun must be not only "readily accessible," but also "concealed." If the word "within" were to mean only partially inside the passenger compartment of a vehicle, it would describe a handgun that could be partially outside of the vehicle, and therefore exposed and not concealed. It seems more likely that, when referring to the handgun, the legislature used "within" to be consistent with the term "concealed" and in accordance with one of its dictionary definitions—"in limits or compass of" and "not beyond"; "enclosed." *See* 357 Or at 756 (reciting dictionary definitions).

It follows that "within" also means entirely inside when modifying "person." There is no reason to think that the legislature intended "within" to have different meanings when modifying different nouns.

Further examination of the statute's text, context, and legislative history confirms that understanding. The statute that became ORS 166.250(1)(b) was originally enacted in 1925. Or Laws 1925, ch 260, § 5. That statute made it "unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person ***." *Id*. In 1999, when the Court of Appeals decided *State v. Williams*, 161 Or App 111, 984 P2d 312 (1999), ORS 166.250(1)(b) provided that "a person commits the crime of

unlawful possession of a firearm if the person * * * [c]arries concealed and readily accessible to the person within any vehicle which is under the person's control or direction any handgun * * *[.]" The defendant in *Williams* was a passenger in a vehicle in which a handgun was concealed. The court held that ORS 166.250(1)(b) did not apply to him, because he was not a driver or a person who otherwise had control over the vehicle. 161 Or App at 118. The court explained that ORS 166.250(1)(b) required three things: "that the handgun is 'concealed and readily accessible to the person,' that the person does not have a license to carry it, *and* that the handgun is concealed 'within any vehicle *which is under the person's control or direction.*'" *Id*. (Emphasis in original.) Thus, from 1925 to 1999, ORS 166.250(1)(b) applied only to persons who carried concealed, readily accessible handguns within vehicles that they were operating. Those drivers would have been located entirely inside their vehicles.

In 1999, the legislature amended ORS 166.250 in direct response to *Williams* to make it applicable to vehicle passengers with ready access to handguns that they could use in drive-by shootings. 357 Or at 759-60. To achieve that end, the legislature made two changes to the wording of the statute. First, it eliminated the requirement that the vehicle be "under the person's control or direction." *Id*. at 759. Second, it changed the word "carry" to the word "possess" to "address the situation in which a handgun is concealed and readily accessible to a person within a vehicle, despite the fact that the person is not physically carrying the handgun." *Id*. at 760. Thus, the legislature made the prohibition that had been applicable to a person who "[c]arries concealed and readily accessible to the person within any vehicle which is under the person's control or direction any handgun," ORS 166.250(1)(b) (1999), applicable to a person who "possesses a handgun that is concealed and readily accessible to the person within any vehicle." ORS 166.250(1)(b).

When the legislature made those two changes, it eliminated the requirement that the person "within" the vehicle be a driver, but maintained the requirement that a person subject to the statute be "within" the vehicle. There is no reason to think that, in doing so, the legislature intended

to change the meaning of the word "within." The legislature did not, for instance, add a noun, such as "owner," that would indicate an intent to govern persons other than those who, like drivers and passengers, sit entirely within vehicles; a verb, such as "place" or "retrieve," that would indicate an intent to govern such actions; or an adjective, such as "partially," to indicate an intent to limit the meaning of the word "within." The legislature could have done so; in Connecticut, for example, the legislature chose to prohibit the *owner* of a vehicle from *having* a firearm in a vehicle. Conn Gen Stat § 29-38(a).

Certainly, as the majority argues, the legislature could have changed the word "within" to "occupy," but why should it have done so? The phrase "within any vehicle" had been easily understood. It referred to the location of persons who have vehicles under their control or direction—drivers who sit entirely inside their vehicles. Who would think that broadening the statute to make it applicable to passengers, who also sit entirely inside vehicles, would require the use of a new word or phrase? Like legislatures in other states, the Oregon Legislative Assembly wanted to capture vehicle occupants as well as operators within the statute's ambit, but a description of those persons as persons "within" the vehicle was sufficient to the task. Unlike the Connecticut legislature, the Oregon Legislative Assembly did not express an intent to expand the reach of ORS 166.250(1)(b) to make it applicable to vehicle owners more broadly or to those who reach into their vehicles to place handguns in, or retrieve them from, a concealed location.

In fact, the statute's context indicates a contrary intent. As noted, ORS 166.250(1)(b) is applicable when a person possesses a "concealed" handgun that is "readily accessible." When a person reaches into a vehicle to place a handgun in a concealed location, the person is in the process of concealing the handgun, but the handgun is not yet "concealed." And a handgun is not "readily accessible" if it is stored in a locked container, provided that the key is not inserted in the lock. ORS 166.250(4)(b). If the statute were interpreted to apply to the act of reaching in to conceal a handgun or to lock such a container, then the person who reached in or turned the lock would violate the statute, but

the person who later drove the car would not. Similarly, ORS 166.260(3) provides that ORS 166.250 does not apply to those who shoot at target ranges "or while going to and from those ranges," or to licensed hunters or fishermen while engaged in hunting or fishing, "or while going to or returning from a hunting or fishing expedition." If ORS 166.250 were interpreted to apply to the act of placing a gun in a vehicle before setting out on such a trip, then the person who prepared the vehicle for the trip would violate the statute, but the driver would not. It seems unlikely that the legislature intended to punish a person for placing a handgun in a location that a driver is permitted to maintain it. It is the requirement that both the person and the handgun be entirely "within" the vehicle that precludes that result. The person who only reaches into the vehicle does not violate the statute and neither does the driver.

The majority does not disagree that the legislature intended to exempt from prosecution persons who reach into vehicles to place handguns in locked compartments or to conceal them for permitted trips. However, the majority apparently finds, without identifying, some other source for that exemption. ORS 166.250(4)(a) provides that a handgun is not "readily accessible" once it is stored in a locked container and the key is removed from the lock. ORS 166.260 provides that a person does not violate ORS 166.250 "while" going to or returning from a permitted trip. Those provisions do not, by their terms, exempt persons who reach into vehicles to place handguns in permitted compartments or in concealed locations before beginning permitted trips. Perhaps the majority reasons that because the legislature permits a person to drive a vehicle under those circumstances, it also permits preparation to drive under those circumstances, including placing a handgun in a permitted place or for a permitted purpose.

That reasoning may be logical, but it also would permit the acts in which defendant in this case engaged. ORS 166.250(1)(b) does not prohibit a person from storing a handgun in a concealed location in a vehicle; it applies only when both the person and the gun are within the vehicle at the same time. Preparation to store a handgun in a vehicle includes placing the handgun into the vehicle. Furthermore,

even under the majority's interpretation of the statute, a person does not violate the statute when he or she places a handgun in a concealed place without inserting any or "some portion" of his or her body in the vehicle when doing so. 357 Or at 761. There is no common sense reason that the legislature would criminalize reaching in with a torso, but not placing in with a hand. Common sense tells us that the legislature did not intend to criminalize reaching into a vehicle to store a handgun or retrieve it from storage; it intended to prohibit drivers and passengers from possessing concealed, readily accessible handguns that they could use to harm members of the public with whom they come into contact.

I understand full well that the words that the legislature uses are the best expression of its intent and that, when chosen words compel a result, the chosen words must be given effect. I know that that is so even when the result seems at odds with the legislature's objective or defies common sense. But here, the word "within" does not compel the result that the majority reaches. The word "within" means "in the limits or compass of" and "not beyond"; "enclosed." If we give the word "within" that dictionary meaning, ORS 166.250(1)(b) correctly applies, as it always has, only to those persons who, like their handguns, are located entirely inside a vehicle. I respectfully dissent.

Brewer, J., joins this opinion.