Submitted November 30, 2011, vacated and remanded January 5, 2012

Stephanie Kathleen HEMINGWAY,
*Petitioner-Respondent,*
*and*

Jason Daniel MAUER,
*Respondent-Appellant.*

Washington County Circuit Court
C104430RO; A147428

270 P3d 375

Gilbert B. Feibleman and Feibleman & Case, P.C., filed the brief for appellant.

No appearance for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

As part of a continuing dissolution proceeding, husband appeals from the trial court's decision to continue a restraining order against him based on the Family Abuse Prevention Act, ORS 107.700 to 107.735 (FAPA). ORS 107.718(10) (allowing hearing to contest *ex parte* FAPA order). Because husband was denied the opportunity to cross-examine wife's witness, we vacate the order and remand.

Under ORS 107.718(1), a court may issue a FAPA restraining order upon a showing that the petitioner:

"[H]as been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that there is an imminent danger of further abuse to the petitioner and that the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child[.]"

"Abuse," in turn, is defined as:

"(a) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.

"(b) Intentionally, knowingly or recklessly placing another in fear of imminent bodily injury."

ORS 107.705(1).

The proceedings that led to the issuance of the restraining order in this case are apparently part of what was then an ongoing dispute between the parties over the terms of the child custody provisions of their dissolution. After an incident in which husband had allegedly abused wife's child from a former relationship, wife petitioned for, and obtained, a FAPA restraining order based, not on the incident itself, but on other alleged contacts that had occurred within 180 days preceding her filing of the petition. According to wife, husband abused her within the statutory time limit by, first, threatening during a telephone conversation to kill her and, second, by charging at her and striking the hood of her car as she was driving out of his driveway after dropping off the parties' child. Husband asserted that, although several telephone conversations occurred in the relevant time frame, he

never threatened wife's life. Regarding the car-charging incident, he testified that he was simply trying to get wife's attention because he believed that she was driving away with a key to his apartment.

During the hearing on the FAPA, Boyd, a Department of Human Services (DHS) social worker who was in the process of investigating wife's claim that husband had physically abused her child, obtained permission to address the court. He informed the court that "there is an active DHS investigation with respect to physical abuse by [husband] toward the older child[.] * * * I'm here to inform the court that I have concerns about [husband] having any additional contact with these children." Husband, who was not represented by counsel at the hearing, asked the court for permission to question Boyd. The court responded that Boyd had not been sworn in. Husband then asked that Boyd be sworn in, and he was.

At that point, the court invited Boyd to "add something." Boyd stated, "The reason that we have not filed for custody of these children is because we have a protective parent. Should [wife] have allowed the children to visit or see [husband], I would have filed a juvenile petition in court[.] I have that much concern." He later also told the court that he believed that husband had a "need for services such as anger management." The court then asked husband if he had any questions for Boyd. Husband replied that the proceedings were "happening out of order." The court then apparently agreed to proceed in a more orderly fashion, and told him that he would have the opportunity to "ask [Boyd] questions" when Boyd returned to the stand.

Ultimately, the court believed wife's version of the incidents and ordered, as part of the restraining order, that "while the DHS investigation is pending there will not be any contact unless DHS arranges for some supervised contact with either child." The court also ruled, "So I am continuing the restraining order[,] and I am ordering for the brief time of the DHS investigation, no contact with the children[,] unless DHS arranges for supervised."[1] Husband then interjected,

---

[1] The record does not disclose whether, or when, the DHS investigation ended or what its result was. After a police investigation, all of the charges against father for the alleged abuse of wife's child were dismissed.

"I'm not allowed to question the DHS person[,] even though he was supposedly called as a witness?" to which the court replied: "You know what, we ran out of time, can't do it." The court subsequently issued an order continuing the restraining order.

On appeal, husband asserts two assignments of error. In the first, he contends that the trial court abused its discretion when it did not permit him to cross-examine wife's witness, Boyd. We agree. In *Howell-Hooyman and Hooyman*, 113 Or App 548, 550-51, 833 P2d 328 (1992), the trial court curtailed proceedings in a domestic relations case before the husband, appearing *pro se*, had the opportunity to complete cross-examining the wife and putting on his case. We held:

> "A trial court, in the exercise of sound discretion, has the authority reasonably to control the presentation of evidence and the examination of witnesses. OEC 611(1). The exercise of that authority is reasonable only if it is fundamentally fair and allows opportunities for a reasonably complete presentation of evidence and argument. *See State ex rel Fulton v. Fulton*, 31 Or App 669, 672, 571 P2d 179 (1977). Absent a ruling that the evidence was (or would be) irrelevant or redundant, OEC 402, it was error for the trial court to deny husband the opportunity to complete his cross-examination and to present his case-in-chief."

Although husband in the present case did have the opportunity to tell the court his version of the relevant events, he did not have the opportunity to cross-examine Boyd in order to explore Boyd's "concerns" about husband's relationship with wife's child and husband's need for "anger management." These statements appear to have affected the court's decision to fashion the order so as to prevent husband from associating with wife's child and the couple's child without DHS supervision, not to mention the court's credibility finding in favor of wife. The lack of a "fundamentally fair" hearing allowing husband "a reasonably complete presentation of evidence and argument" is apparent.

Our conclusion that husband was not permitted completely to attempt to undercut wife's evidence renders it impossible for us to address his second assignment of error, in which he urges us to review the proceeding *de novo* and

argues that the evidence did not support the court's order. We therefore vacate the order and remand for further proceedings.

Vacated and remanded.