Argued and submitted September 27, 2016, affirmed June 28, 2017

In the Matter of the Marriage of

Marco Antonio DOMINGUEZ,
*Petitioner-Respondent,*
*and*

Gillianne Madelynne FIELDS,
*Respondent-Appellant.*

Washington County Circuit Court
C120210DRD; A159621

399 P3d 472

George W. Kelly argued the cause and filed the briefs for appellant.

Craig M. Cowley argued the cause for respondent. With him on the brief was Gevurtz, Menashe, Larson & Howe, P. C.

Before Sercombe, Presiding Judge, and DeHoog, Judge, and Flynn, Judge pro tempore.

**DEHOOG, J.**

Mother appeals a supplemental judgment changing custody of the parties' two children from mother to father. On appeal, mother asserts that the court erred in denying her request for additional time to present her case.[1] On review for abuse of discretion, *Daves v. Kohan*, 282 Or App 243, 244, 385 P3d 1161 (2016), *rev den*, 361 Or 439 (2017), we conclude that the trial court did not abuse its discretion in denying mother's request for additional time, because the court did not prevent her from making a reasonably complete presentation of evidence and argument. Accordingly, we affirm.

We start with a review of the facts relevant to mother's assignment of error, which are undisputed. In 2012, the trial court entered a general judgment awarding sole custody of the parties' two children to mother and parenting time to father. In 2014, father filed a motion to modify that judgment, alleging a substantial and unanticipated change in circumstances. *See Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990) (a parent seeking to modify custody bears the burden of showing both a change in circumstances and that the proposed modification is in the best interests of the children).

Before commencing the hearing on father's motion to modify, the trial court informed the parties that it had limited time to hear their case:

"I don't have time for a multi-day hearing.

"*****

"I'll give you today, I'll give you half of tomorrow. *** [T]hose are the parameters we can work with.

"*****

"I'll give four hours [to father] and then I'm turning the witness[es] over to [mother]. And at that point in time if there's more that has to be done *** then we'll have to cross that bridge when we get to it.

---

[1] Mother also raises two other assignments of error, which we reject without written discussion.

"So how you arrange witnesses is up to you. * * * I'm telling you what time you have before me, and that's the only time that you have before me."

Father's attorney asked if there was "a possibility of just setting a second day for trial at a separate time." The court indicated that it might be possible to do that, but noted that it would amount to "kicking that can down the road." To save time, and at the court's suggestion, the parties agreed to waive opening statements, but only after the court had assured mother's attorney that it had "read [her trial] memorandum and [would] let that stand as [her] opening statement."

On the first day of trial, father called five witnesses, whose testimony consumed nearly the entire day. The sole exception was one witness whom the court allowed mother to call out of order. When trial resumed the next morning, the court asked about the parties' remaining witnesses. Father's attorney replied that father would be testifying and calling one more witness. Mother's attorney likewise indicated that mother would testify and said, "I *might* have another witness. It depends on the testimony. I don't anticipate he'd be more than 15." (Emphasis added.) In response, the court reminded the parties that it had "placed everybody under time constraints. The bottom line is those are absolute."

Father called his remaining witness, then took the stand himself. While father was testifying, mother's attorney drew the court's attention to the time: "I realize you said we're stopping at 12:00 no matter what. And we've had no opportunity to put on a case. Can we clarify from the Court when we may have some time since an hour and a half to put on our entire defense, we would have to start in five minutes." The court confirmed with father that he was wrapping up his case-in-chief, leading to the following exchange:

"THE COURT:    * * * I will go into lunch hour with you. I need to hear from your client, and you said there was one other *potential* witness. * * * You've got until 10:45 to end the direct[.] * * * I would presume a great deal of your case would be actually crossing—

"[MOTHER'S ATTORNEY]:    *Indeed.*

"THE COURT:   So I'm sort of building that in as well, but I will go through my lunch hour to hear this out.

"[MOTHER'S ATTORNEY]:   Thank you, so much.

"THE COURT:   But my court will start filling up at 1:00 so—

"[MOTHER'S ATTORNEY]:   I understand. I think if we could have an hour, at least, for my client to be on and—

"THE COURT:   Your point's well taken."

(Emphases added.) Father finished his direct testimony shortly thereafter. Although the court allowed mother to fully cross-examine father, the court cut short father's testimony on redirect.

Mother proceeded to take the stand and gave her direct testimony in full. As father was cross-examining mother, however, the trial court interjected, telling father that he was out of time. Father replied that he was not done. In response, the court allowed father to "hit one last point and be done," after which it concluded the hearing without further objection from either side.

At father's suggestion—and without objection from mother—the court directed the parties to submit written closing arguments in two weeks' time. Mother submitted a lengthy closing, together with a motion requesting additional trial time in which to give redirect testimony and call her last witness, Banda. With her motion, mother submitted two unsworn statements—captioned as declarations and referred to as offers of proof—which described in detail the testimony that mother and Banda would provide if the court allowed additional hearing time.

Banda's statement explained that he was mother's friend and had assisted her with parenting-time exchanges. Banda also stated that, in his opinion, mother was a good parent and was trustworthy. He further described what he apparently viewed as father's odd and rude behavior at the exchanges, and recounted statements by the children that their father was not nice to them and that they did not want to go home with him. Notably, Banda's statement

also indicated that he had shared much of that information with Dr. Brounstein, a clinical psychologist who testified at trial.[2]

Mother's declaration summarized the testimony that she would have given on redirect, had the court allowed her that opportunity. In substance, mother sought to explain some of the allegations that father had made against her and to explain certain parenting decisions that father had called attention to during the hearing.

The trial court denied mother's post-hearing request as part of its written ruling on the merits and explained that, in the court's view, the "[p]arties were given a sufficient amount of time to fully apprise the Court regarding the issues, both by allowing for direct and cross-examination. Whether they used that time efficiently is open for argument." The court further explained that mother

"now argues she did not have [a] fair opportunity to examine her witnesses, but says nothing of the time allowed to thoroughly cross-examine the petitioner and witnesses regarding petitioner's burden of proof. Not only did the Court receive and consider all exhibits (over one hundred contained in four binders) requested of both parties, but the court allowed extended time for parties to submit lengthy closing arguments and *the Court received and considered [mother's] Offer of Proof including Declaration of [Banda] and Declaration of [mother].* * * *. I would note that the Court has spent far more than the one additional day requested to fully consider all arguments and evidence."

(Emphasis added.) As to the merits, the court concluded that there had been a substantial and unanticipated change in circumstances, awarded father sole custody of both children, and provided for parenting time with mother.

On appeal, mother contends that the trial court erred by denying her a sufficient opportunity to present her case. Mother argues that it was fundamentally unfair for the court to limit her to such a "shortened and incomplete

---

[2] The trial court also received Brounstein's written custody evaluation and supplemental letter into evidence without objection.

presentation" of evidence, and, in her view, the court did not cure that error by considering her two declarations.[3]

Father responds that the trial court properly managed the time available for the hearing and gave each party a reasonable opportunity to present evidence and argument. Father notes that the court limited each party's presentation of evidence, not just mother's presentation. He emphasizes that, as the party seeking a change in custody, he bore the burden of proof, so it was reasonable for his affirmative case to take substantially more time than mother's. Finally, father reasons that, given the court's post-trial consideration of mother's offers of proof as substantive evidence, it is apparent that the court did not believe that mother had anything to add that could influence the court's decision. For the reasons set forth below, we conclude that the trial court gave mother an opportunity for a reasonably complete presentation of evidence and argument and that the court, therefore, did not abuse its discretion in denying mother's post-trial request for additional hearing time.

A trial court may, in the exercise of sound discretion, reasonably control the presentation of evidence, the examination of witnesses, and the progress of trial. OEC 611(1);[4] OEC 403;[5] *Johnson v. Captain*, 281 Or App 360, 363-65, 384 P3d 532 (2016). To be reasonable, however, the court's exercise of that authority must be fundamentally fair, meaning, as relevant here, that the court must allow

---

[3] As noted, the statements mother submitted were not sworn. They also did not contain language indicating that they were made under penalty of perjury, as required of declarations under ORCP 1 E(2). Nonetheless, given that the trial court described and received both statements, without objection, as declarations, we will use the same characterization for the remainder of this opinion.

[4] OEC 611(1) provides:

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth, avoid needless consumption of time and protect witnesses from harassment or undue embarrassment."

[5] OEC 403 provides that,

"[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

each party the opportunity for a reasonably complete presentation of evidence and argument. *Johnson*, 281 Or App at 363-65; *see State ex rel Fulton v. Fulton*, 31 Or App 669, 671-72, 571 P2d 179 (1977). At a minimum, each party has the "right to produce material evidence, confront adverse evidence, and present legitimate argument relating to the facts and the law." *State v. Landon*, 283 Or App 131, 135, 388 P3d 1157 (2016) (internal quotation marks and ellipses omitted).

Thus, although a trial court has considerable discretion in managing the parties' use of available court time, the court may not exercise that discretion so as to effectively prevent a party from presenting his or her case. So, for example, "a trial court has some discretion to control cross-examination, but it does not have the power wholly to deny the right to cross-examine." *Johnson*, 281 Or App at 364 (internal quotation marks omitted); *see Hemingway and Mauer*, 247 Or App 603, 607, 270 P3d 375 (2012) (where a witness's statements "appear[ed] to have affected the court's [ultimate] decision," yet the trial court had denied the opposing party any opportunity to cross-examine that witness, "[t]he lack of a fundamentally fair hearing allowing [that party] a reasonably complete presentation of evidence and argument [wa]s apparent" (internal quotation marks omitted)). Similarly, under circumstances somewhat analogous to this case, we have held that a trial court abused its discretion in denying the father a chance to conduct "redirect examination, to present further witness[es] or evidence and to present argument," *State ex rel Fulton*, 31 Or App at 671. We explained that, "to sustain the court's decision[, we would have been required to] speculate that the father could have presented no further material evidence or could not have presented a legitimate, cogent argument on the facts and the law." *Id.* at 672.

Subject to those constraints, a trial court may limit the presentation of evidence if it determines that the evidence would be irrelevant or redundant, as father suggests happened here. *See Howell-Hooyman and Hooyman*, 113 Or App 548, 551, 833 P2d 328 (1992). In *Landon*, for example, we held that, because the defendant had used his time

unwisely by pursuing matters that the judge had told him would not be helpful to his case, the defendant had been given a "sufficient opportunity to present his evidence," even though the trial court had not allowed him to present any evidence as to one material issue. 283 Or App at 132, 134-35. Under the circumstances of that case, we concluded that "the court reasonably could have inferred that continuing the proceedings would not have assisted with the resolution of the matters at issue." *Id.* at 135. Similarly, in *Daves*, we concluded that the trial court had not abused its discretion by denying the respondent the opportunity to call two witnesses, because "[i]t [wa]s evident from the record that the court determined that the probative value of that proposed testimony, if any, was substantially outweighed by considerations of delay and needless presentation of evidence." 282 Or App at 250.[6]

Returning to this case, we conclude that the trial court afforded mother sufficient opportunity to make a reasonably complete presentation of evidence and argument and that the hearing, therefore, was not fundamentally unfair.

First, the court did not in any way curtail mother's ability to "present legitimate argument relating the facts and the law." *Landon*, 283 Or App at 135 (internal quotation marks omitted). Mother's trial memorandum, which the court expressly considered, presented her theory of the case and outlined mother's challenges to father's evidence offered to show a substantial and unanticipated change of circumstances. In addition, mother submitted a lengthy written closing in which she again presented her theory of the case, detailed her view of the evidence, and argued that father had not demonstrated a substantial and unanticipated change in circumstances. As with mother's trial memorandum, the court expressly considered mother's written arguments in reaching its decision. Accordingly, it is beyond dispute that

---

[6] Specifically, in that case, the trial court determined that the testimony of the respondent's first witness "would not have been particularly probative," because it "would not have tended to undercut petitioner's version of events in any meaningful way." *Daves*, 282 Or App at 250. With regard to the respondent's second witness, the court found that she intended to testify about events that were not in dispute. *Id.*

mother had ample opportunity to present her legal theory of the case.

Second, although the court imposed some limitations on mother's presentation of evidence, under the circumstances of this case, we are satisfied that mother was nonetheless able to make a *"reasonably complete* presentation of evidence," *Howell-Hooyman,* 113 Or App at 551 (emphasis added), and that her trial, therefore, remained fundamentally fair. As the trial court observed, the burden of proof in this case was on father, not mother. As a result, mother expressly acknowledged that "a great deal of [her] case" consisted of cross-examining father and his other witnesses. And mother does not contend that the trial court in any way impaired her ability to conduct a thorough cross-examination to "confront [the] adverse evidence," *Landon,* 283 Or App at 135 (a person's right to a fundamentally fair trial includes the right to confront evidence against her); *see Johnson,* 281 Or App at 363-65 (complete denial of opportunity for cross-examination amounted to the denial of the right to a fair trial).[7]

Moreover, even though mother argues that she did not have the chance to rehabilitate her own testimony through redirect examination or to present any live testimony from Banda, we remain convinced that the trial was fundamentally fair. We recognize—and father does not dispute—that redirect testimony can be persuasive, and that live testimony may, in some instances, prove to be more credible than written submissions.[8] Nonetheless, we conclude for several reasons that the court gave mother a

---

[7] Mother notes that the trial court's comments at the start of the hearing suggested that each side would have about four hours for its case-in-chief but that, as it turned out, father's witnesses spent about seven-and-a-half hours on the stand, while mother's spent only about two-and-a-half hours. Father, on the other hand, points out the amount of time that father's attorney was in control of the hearing—asking questions of father's witnesses or cross-examining mother's witnesses—and the amount of time mother's attorney was in control. In our view, neither of those arbitrary measurements is a useful indicator of whether mother was allowed sufficient time.

[8] We note, however, that because the trial court opted to consider Banda's declaration as substantive evidence, and not merely as an offer of proof, that witness's written testimony enjoyed the benefit of not being challenged through cross-examination.

sufficient opportunity to make a reasonably complete presentation despite denying her request for more trial time.

For one thing, mother was able to present most of her case without any limitation at all. We have already described mother's multiple opportunities to address the court in writing, a process she agreed to and likely benefitted from.[9] As also discussed, mother was able to cross-examine all of father's witnesses without limitation and acknowledged that "a great deal of [her] case" comprised cross-examining those witnesses. In addition, the court allowed mother to examine one of her own witnesses out of order and did not restrict her direct testimony in any way. The trial court also accepted and considered all of mother's exhibits. Thus, unlike *Howell-Hooyman*, 113 Or App at 548, or *Decker v. Klapatch*, 275 Or App 992, 365 P3d 1169 (2015), cases that mother emphasizes, this is not a case in which a party was not allowed to finish cross-examination or even commence its case-in-chief, *Howell-Hooyman*, 113 Or App at 550, or in which the trial court, solely in the interest of judicial economy, prevented a party from calling a witness essential to that party's satisfaction of his burden of proof, *Decker*, 275 Or App at 998. In light of the substantial opportunity mother had to present her case, we do not consider those cases, in which the parties had little or no opportunity to present major facets of their cases, to be particularly instructive here.

Furthermore, even though mother did not have the opportunity to present her own redirect or any of Banda's testimony *live*, the trial court allowed her to present the *content* of that testimony through the two declarations that she submitted with her motion. Mother does not question the court's assertion that it considered the content of those materials as substantive evidence, but summarily argues that the declarations do not cure the error of denying her request, because live testimony would have been more persuasive. Mother contends that the only way that the declarations could be

---

[9] The trial court informed the parties that it would inevitably spend significantly more time reviewing the evidence and reaching its decision if the parties submitted written closings, and mother embraced that opportunity by submitting a 28-page closing argument that addressed the law and evidence in considerable detail.

adequate substitutes for live testimony would be if the court were to accept their contents as true. Whether or not that broad proposition has merit in other contexts, we reject, for two reasons, mother's contention that it dictates the outcome here.

First, because the declarations informed the trial court what additional testimony mother intended to present, the court could determine whether that evidence would be helpful to its decision or was, instead, information that it could discount or disregard as redundant, irrelevant, or otherwise inadmissible. Notably, in discussing its time constraints at the start of trial, the court informed counsel that its willingness to extend the available time would depend on whether it was convinced that it would "be worth [the court's] time listening to the additional evidence." *See* OEC 403 (authorizing exclusion of evidence when probative value is substantially outweighed "by considerations of undue delay or needless presentation of cumulative evidence"). Mother had already had the opportunity to refute father's allegations in her live, direct testimony, so the court could reasonably have concluded that her proposed redirect testimony would add little or nothing to her case. And, given that Banda's declaration was replete with hearsay that, in any event, the court could have believed was already accounted for in Brounstein's custody evaluation, the court could also have concluded that Banda had nothing to add.

Second, contrary to mother's apparent contention, the trial court may well, in fact, have taken the written statements at face value, but nonetheless concluded that father had sustained his burden of proof. Even if accepted as true, the written testimony would not render the court's ruling unsound. That is, even accepting the contents of the declarations as true, the record as a whole supports the trial court's determination that the proposed change in custody was both legally permissible and in the best interests of the children.

In concluding that the trial court's management of mother's trial did not constitute an abuse of discretion, we do not intend to suggest that, in all instances, allowing a party to submit written testimony is an adequate substitute

for that party's right to present live witnesses. In this case, however, mother did not ask to present redirect at trial, she implied during trial that her final witness might not be necessary, she did not tell the court until two weeks after trial that she wanted to present additional testimony, and she was able to convey the substance of her additional evidence to the court in the form of detailed declarations. Further, the trial court expressly read and considered that written testimony, together with mother's trial memorandum and her extensive written closing argument. Thus, the trial court handled mother's case fairly and gave mother the opportunity to make a reasonably complete presentation of evidence and argument; indeed, the presentation mother was able to give was arguably complete. Accordingly, we affirm.

Affirmed.