No. 562 August 14, 2024 341

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Josiah David DOUGLAS,
*Petitioner-Respondent,*
*and*

Sarah Marie MINZER,
fka Sarah Marie Douglas,
*Respondent-Appellant.*

Washington County Circuit Court
20DR11401; A178267

D. Charles Bailey, Jr, Judge.

Argued and submitted June 8, 2023.

George W. Kelly argued the cause and filed the briefs for appellant.

Andrew W. Newsom argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Award of child support reversed and remanded; award of attorney fees and costs reversed; otherwise affirmed.

**POWERS, J.**

Mother appeals from a supplemental judgment of dissolution awarding father custody of the parties' child and establishing a child support order. On appeal, mother contends that the trial court abused its discretion by limiting her presentation of evidence and examination of witnesses, thereby denying her a fundamentally fair trial. She also challenges the court's calculation of child-care costs, the denial of her request for a hearing on those costs, and the court's discretionary award of attorney fees. As we explain below, although we would not wish the trial court's management of the proceedings to be seen as ideal, it was within the court's permissible range of discretion and ultimately did not deprive mother of the opportunity for a reasonably complete presentation of evidence and argument. We further conclude that the court's support order included child-care costs that are above the maximum allowed by the support guidelines. Thus, because the court erred in its support calculation, we reverse and remand for recalculation of child support. That disposition also results in a reversal of the attorney fee award by operation of law. Accordingly, we affirm in part and reverse in part the supplemental judgment of dissolution of marriage and reverse the attorney fee award.

We begin with an overview of the underlying facts, which are undisputed. The parties were married in 2019 and have one child together, E. After father petitioned to dissolve the marriage, the trial court held a trial in September 2021 to establish custody, parenting time, and child support. Father was represented by counsel at trial, and mother represented herself.

Both parties made opening statements, after which the trial court informed the parties that they would each have an hour and a half to present their evidence. For his case-in-chief, father called seven witnesses to testify, including himself. During that time, mother cross-examined all of father's witnesses except for father—father's testimony was twice interrupted due to another of his witnesses becoming available via remote video. Father's time had expired after the second interruption, and the court informed the parties that they could submit whatever additional information they

wanted via affidavit or declaration. Father did not return to the stand for further direct examination, and the court did not offer mother the opportunity for cross-examination.

For her case-in-chief, mother called two witnesses. The first witness was Laughlin, mother's friend. Mother used most of her time on her second witness, Dr. Miller, mother's psychiatrist. Father's counsel cross-examined both witnesses. Following Miller's testimony, the court again informed the parties, "if you all have additional witnesses that you want to present to the court, I'll allow you to present those witnesses via affidavit." The court explained that, if the affidavits made hearsay references, the references would not be considered. Father and two of his witnesses submitted affidavits. Mother did not submit her own affidavit, but her two witnesses did.

Following the trial, mother hired counsel and filed a motion captioned: "Motion for Hearing Attendant to Oregon Evidence Code." In that motion, mother contended that it was error for the court to substitute affidavits in place of live testimony from witnesses. The court denied the motion, explaining that it "already had a hearing and have given parties opportunity to submit additional affidavits. Further court time would not be of any help."

In November, the court held a final hearing to allow for the testimony of Dr. Lee, a licensed psychologist, who had performed a custody evaluation for the parties. At the outset, the court told the parties that questioning would be limited to one and a half hours total, with counsel for mother and counsel for father each getting half of that time to question Lee. The court did not allow closing arguments, explaining that "closing arguments aren't going to be helpful to the court." The court did allow the parties to offer written submissions of their recommendations for parenting time.

After taking the case under advisement, the trial court issued a general judgment giving father sole custody and mother having approximately 10 days with E per month. In making its ruling, the court gave "some credibility" to both father and mother but found that "both seemed

to be clouded by the animosity between the two." The court gave "no credibility" to mother's witness, Miller, finding that Miller "lost any and all objectivity and was extraordinarily unprofessional by getting too close to" mother. The general judgment also established child support in favor of father.

Mother filed objections to the general judgment challenging the support award and requesting a hearing. In particular, mother challenged the trial court's imputation of child-care costs for father, which the court included as $2,000 per month. The court denied the request and issued a supplemental judgment that left the child-care costs and support award unchanged. In a separate order, the court awarded father the entirety of his attorney fee request of $66,025.50. Mother filed an objection to those fees, arguing that the court's own decision and order made clear that both parties had engaged in unreasonable requests and actions throughout the case. The court rejected mother's challenge and awarded father the full amount of his request for attorney fees. Mother now timely appeals from the supplemental judgment and attorney-fee order.

In her first assignment of error, mother contends that the trial court erred in denying her "Motion for Hearing Attendant to Oregon Evidence Code" and, as a result, in making its custody determination. Mother contends that the court's denial of her motion, which challenged the use of affidavits in place of live testimony, was error because it denied her the opportunity to cross-examine father's witnesses and resulted in a trial that was fundamentally unfair. *See Howell-Hooyman and Hooyman*, 113 Or App 548, 551, 833 P2d 328 (1992) (explaining that a trial court's authority to control the presentation of evidence and examination of witnesses is reasonable only if it is "fundamentally fair and allows opportunities for a reasonably complete presentation of evidence and argument").

Father remonstrates that mother failed to preserve her argument because the first time she challenged the trial court's decision to accept witness affidavits was in her motion, days after the trial itself. Father further asserts that, even if her argument was preserved, the court correctly denied mother's motion because the parties were

given equal time to present their cases and mother was not restricted in how she chose to spend her allotted time.

We review the trial court's exercise of control over the presentation of evidence and the examination of witnesses for abuse of discretion. *Howell-Hooyman*, 113 Or App at 550. First, we conclude that mother adequately preserved her argument for appeal. Her motion challenged the fairness of the court's decision to limit the parties' live testimony and argued that it was "plain error for the court to substitute affidavits for the taking of testimony." Her motion was filed after the initial trial but before the final hearing in which the court heard additional testimony. Thus, the court and the parties had adequate time to consider and address the issue if necessary. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that the primary purposes of the preservation rule are to allow the trial court to consider a contention and correct any error, allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record).

Second, having reviewed the record, we conclude that the trial court did not abuse its discretion in denying mother's motion because mother was not prevented from making a reasonably complete presentation of evidence. A trial court has "considerable discretion" to manage parties in their use of available court time. *Dominguez and Fields*, 286 Or App 504, 510, 399 P3d 472 (2017). In exercising that discretion, the court may reasonably control the presentation of evidence, examination of witnesses, and the progress of trial. OEC 611(1); *Howell-Hooyman*, 113 Or App at 551. To be reasonable, the court must be fundamentally fair and must allow each party the opportunity for a reasonably complete presentation of evidence and argument. *Id*. The court's exercise of discretion does not allow it to effectively prevent a party from presenting their case and it may not wholly deny a party the right to cross-examine. *Dominguez*, 286 Or App at 510.

Here, the court's control over the presentation of evidence and examination of witnesses did not prevent mother from making a reasonably complete presentation of her evidence. At the outset, the court told the parties that

they had limited time to present their evidence but left open the possibility that, if it felt more time was needed, "we'll either set it on a future date or the court will receive affidavits from the parties." The court was strict in adhering to the time restraints it initially set for each party, and there is no dispute that both parties had equal time. Further, the court's statement at the outset suggests that the court, initially, was not closed to the possibility that the parties would need additional time to present evidence. After hearing witness testimony at the September trial and becoming familiar with the evidence both parties were presenting, it was not outside the allowable exercise of discretion to limit further testimony at the second hearing to only hearing live testimony from the custody evaluator.

Mother also challenges the trial court's decision to take evidence by using affidavits. She argues that by using that process the trial was fundamentally unfair because it "was principally completed by way of affidavits," and father's affidavit "might have been found to be based on hearsay" had she been allowed to cross-examine him. As noted earlier, the court told the parties at the end of the first hearing that they could submit additional evidence by way of affidavit or exhibit. Father chose to submit an affidavit and mother chose not to do so. In explaining that it would accept affidavits, however, the court told the parties that if the affidavits "make hearsay references * * *, the court will understand that there are hearsay references and won't consider the hearsay references." Further, the court's judgment does not reference father's affidavit. Rather, the court's order gave "some credibility" to both father and mother but found that "both seemed to be clouded by the animosity between the two."

We further conclude that the trial court did not deny mother the right to cross-examine witnesses or the opportunity present her own case. Mother cross-examined all of father's witnesses except for father himself. As described above, father's direct testimony was cut short by the availability of another of his witnesses and, by the time that witness finished testifying, father's time to present evidence had expired. Although the court did not offer mother the option

to cross-examine father, mother could have called father as a witness during her own time. Instead, mother used her time calling two witnesses: Laughlin, who described herself as mother's "best friend," and Miller, who the court found to have "no credibility" due to her close relationship with mother. Mother also could have offered her own testimony during her allotted time. Indeed, during Miller's testimony, the court encouraged mother to "make sure you leave yourself some time" and "let's go ahead and—is there anything more—because you wanted to testify." Mother, however, chose to continue asking Miller questions on direct examination.

In sum, we are not persuaded that the trial court, in exercising its discretion to control the submission of evidence and examination of witnesses, denied mother a fundamentally fair trial or the opportunity to present a reasonably complete presentation of her evidence. To be sure, the allotted time was limited, and mother's litigation choices on how to spend her allotted time and whether and to what extent to submit additional written evidence when given the opportunity may have negatively impacted her overall presentation of evidence and contributed to the perception of an unlevel playing field between the parties. The trial court's management over the trial, however, did not render the proceedings fundamentally unfair.

Mother's second and third assignments of error relate to the trial court's child support order. In its order, the court entered father's child-care costs as $2,000 and mother's as $0. Mother's counsel filed written objections to the order and requested a 15-minute hearing to address the issue of child support. The court denied mother's request for a hearing and, in its supplemental judgment, maintained the child-care costs and support order from the general judgment.

Mother assigns error to the trial court's denial of her objection. Specifically, she argues that the court erred by (1) not including any of her own child-care costs, (2) setting father's child-care expenses above the maximum allowable expense, and (3) including care for a nonjoint child in father's purported costs. Further, she argues that the trial

court was required to hold a hearing and erred in denying her request. *See* UTCR 5.050(1) (allowing oral argument on motions in civil cases when certain requirements are met).

Father contends that mother did not raise the issue of child-care costs to the trial court and thus failed to preserve her arguments on that issue. We reject father's preservation argument. Mother's objection to the general judgment included an objection to the child support order because it "is substantially in excess of what is permitted by Oregon law, per the Oregon Child Support Guidelines," and her request for a hearing sought a "15-minute hearing to address the issue that the General Judgment of Dissolution includes a child support judgment that is based on a claim of daycare costs that is well in excess of the amount allowed by the guidelines." Thus, mother's objection was specific enough to preserve her argument that father's costs exceeded the maximum amount allowed. *See State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015) (explaining that, to adequately preserve an issue, a party must provide the trial court with an explanation of his, her, or their objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to consider and correct the error). Because it is in excess of the limit set by the guidelines, the court erred in setting father's child-care costs as $2,000.

In Oregon, the maximum cost allowable for child care varies based on geographic location and the child's age. When the trial court issued its general judgment, and when the supplemental judgment was entered in March 2022, E was in the one to three-year-old category. In the metropolitan area of Portland, where the parties resided, the maximum allowable child-care cost for that age group was $1,404.[1] *See* OAR 137-050-0735 Table 1 (June 1, 2019) (setting maximum allowable costs); *see also DeShaw and Nahar-DeShaw*, 276 Or App 713, 716, 369 P3d 1194 (2016) (applying the guidelines in effect at the time the support order was entered). Accordingly, the court erred in setting father's child-care cost at $2,000, and we reverse and remand for recalculation of child support. Based on that disposition, we

---

[1] Table 1 was amended effective December 2, 2022. Because of that change, and because E is now in a different age category, the maximum under the current rule is $1,400.

need not address mother's other asserted errors related to child-care costs because the trial court and the parties will have the opportunity to address them, including the applicability of the UTCR for hearings on motions, on remand.

Mother's final assignment of error challenges the trial court's granting of attorney fees and costs to father. After entry of the supplemental judgment, father sought attorney fees in the amount of $66,025.50, which included fees from three separate attorneys throughout the dissolution process. The court issued an order granting the award, concluding that the fees were reasonable "given [mother's] behavior up to and including the trial." Mother argues that reversal of the court's judgment for any of her above assignments of error requires reversal of the attorney fee award. Alternatively, she contends that the court abused its discretion because the court's findings related to the award lacked specificity.

Father contends that reversal on mother's second and third assignments of error should not result in a reversal of the award of attorney fees because the "child support issue was the subject of extremely minimal attention" at the trial court. Father cites to no authority for that contention, however, and we have found none. Rather, on appeal, if we reverse a judgment "to which an award of attorney fees or costs and disbursements relates" the award of attorney fees "shall be deemed reversed." ORS 20.220(3); *see also State ex rel Select Reform Com. v. City of Jefferson*, 306 Or App 239, 246, 474 P3d 399 (2020) (explaining that "[i]f we reverse the general judgment, the attorney fee award in the supplemental judgment will also be reversed by operation of law"). Here, the attorney fee award related to the supplemental judgment, which we reverse in part. Accordingly, the attorney fee award is reversed as a matter of law. On remand, the parties and the court will have an opportunity to address whether the findings and ultimate determination comports with the requirements for an attorney fee award in a case where the court found that both parties may have been "clouded" by the animosity between the two.

Award of child support reversed and remanded; award of attorney fees and costs reversed; otherwise affirmed.