No. 745 August 20, 2025 761

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Jessica Marie BOOTH,
*Petitioner-Respondent,*
*and*

Myles Thomas BOOTH,
*Respondent-Appellant.*

Umatilla County Circuit Court
20DR07941; A182254

Robert W. Collins, Jr., Judge.

Argued and submitted March 18, 2025.

Michael Vergamini argued the cause and filed the brief for appellant.

Laura Graser argued the cause and filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

General judgment reversed as to parenting time; otherwise affirmed; supplemental judgment reversed.

**JOYCE, J.**

In this domestic relations case, husband appeals from a general judgment of dissolution and a supplemental judgment for attorney fees and costs, raising four assignments of error. Husband's first and fourth assignments of error challenge how the trial was conducted, primarily as relevant to property division and child support. Husband's second and third assignments of error challenge the trial court's findings as to parenting time for the parties' four children. As described below, we agree with husband that the court improperly relied on information outside of the evidentiary record in finding that husband sexually abused one of the children, as relevant to deciding parenting time, and we therefore reverse and remand for further proceedings on parenting time. We otherwise affirm.

## CONDUCT OF TRIAL

In his first assignment of error, husband argues that the trial court erred in denying him the opportunity to testify about "the context, circumstances and relevance of [his] exhibits" during trial. We review the trial court's exercise of control over the presentation of evidence and the examination of witnesses for abuse of discretion, *Dominguez and Fields*, 286 Or App 504, 505, 399 P3d 472 (2017), and conclude that the trial court did not abuse its discretion.[1]

The facts relevant to this claim of error are undisputed. The parties married in 2008 and had four children together. Wife filed for divorce in 2020. The court held a two-day trial to determine custody, parenting time, child support, and division of the parties' assets. At the time of trial, wife was represented by counsel, and husband represented himself.

During the first day of trial, the parties made brief opening statements and wife completed her case-in-chief. She called four witnesses to testify, including herself and husband, and offered no exhibits. Husband had the

---

[1] Husband asserts that his exhibits "pertain[ed] to every aspect of the case, including but not limited to child support and the equitable distribution of marital assets and liabilities." Because we reject the first assignment of error, we need not get into its exact scope, but we note that the exhibits are primarily relevant to the financial issues in the case, *i.e.*, property division and child support.

opportunity to cross-examine all of wife's witnesses but chose to cross-examine only two of them.

Toward the end of wife's case, the court scheduled a second day of trial about two months out. The court then cautioned husband about his inefficient use of time, stating,

> "[W]e're going to try to give you the time you need to finish your case, but we're sitting here a lot waiting for you, [husband], and you need to be prepared with your questions and know where you're going and kind of get through that a little more expeditiously or we're going to be here far longer than what we have available."

Husband acknowledged the court's warning, and the parties proceeded with trial. By the end of the first day of trial, husband had begun his case-in-chief and had completed questioning his first witness.

When the second day of trial started, the court was "running so far behind" that the parties had "lost about half the time" that they had been allotted. The court told the parties that it hoped they could "get this matter concluded today" and asked husband to resume his case. Husband called three witnesses, including wife and himself.

During husband's testimony, wife's counsel expressed that he was "concerned about time" because they only had 14 minutes of their scheduled time remaining. By that point, husband had only offered one exhibit, so he asked the court whether he should "go through these exhibits, or *** wait until next time?" The court responded that there would not be a "next time" and that they were "going to be done here at 5:00." The court expressed that husband "didn't come to court prepared" noting that he "didn't submit an exhibit list," did not provide wife with "copies of all the documents [that he] wanted to put into evidence," and "didn't file [his] exhibits with the court or provide [the court] with copies of any exhibits [he] wanted to admit." Furthermore, the court noted that husband "didn't know what questions [he] wanted to ask," which had caused "long pauses where [they] were sitting [there] for three, four, five minutes at a time waiting for [him] to ask the next question."

The court then told the parties that, "[b]ecause we are out of time and we're not going to try to rush this in the next ten minutes, I will allow each of you to [submit simultaneous] closing [arguments]." With respect to husband's exhibits, the court stated that husband could submit them in "hard form" and that he would have to "identify the ones that [he] th[ought] [were] relevant to this case and why" along with some "qualifying information." The court told husband that it would consider his written explanations as to the relevance of each exhibit "the same as if you testified about it" and that it was "not just going to admit things willy-nilly, but [that the court would] review them." Furthermore, the court stated that if, after it considered all of the evidence, it felt that the parties needed another hearing it would "get one scheduled."

Following trial, husband submitted an affidavit containing his exhibit list, exhibits, and explanations as to the relevance of each document. Both parties also submitted their closing arguments in writing. After taking the case under advisement and without holding another hearing, the court issued an opinion and judgment that distributed the parties' assets and awarded wife legal custody of the children. As for parenting time, the court ordered that husband was not permitted any parenting time until he completed a psychosexual evaluation and followed whatever recommendations emerged.

On appeal, husband contends that the trial court's decision to limit his live testimony regarding his exhibits was error because it "substantially deprived [him] of his ability to present evidence and to prosecute his case." In response, wife contends that husband failed to preserve his argument and that, even if his argument was preserved, the trial court did not err in restricting husband's testimony.

We conclude that husband adequately preserved his argument for appeal. After the trial court presented its plan to accept closing statements in writing and husband's exhibits with a supporting affidavit, husband objected to the court's proposed approach stating, "Your Honor, I'm not done with my own testimony. Everyone else had a fair chance in this divorce, and I have not." Husband's objection was

sufficient to allow the court and wife to consider and address whether the trial court's exercise of control over his presentation of evidence rendered his trial fundamentally unfair. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that the preservation rule is designed to allow the trial court an opportunity to consider and correct any asserted error, to give the opposing party an opportunity to respond, and to foster a full development of the record).

Turning to the merits, we conclude that the trial court did not abuse its discretion in limiting husband's testimony and in requiring him to submit his exhibits with an affidavit. A trial court has "considerable discretion" in managing how parties use their available court time. *Dominguez*, 286 Or App at 510; *see Douglas and Minzer*, 334 Or App 341, 345, 556 P3d 1041 (2024) ("In exercising that discretion, the court may reasonably control the presentation of evidence, examination of witnesses, and the progress of trial."). That discretion, however, must be exercised in a way that is fundamentally fair and that affords each party a meaningful opportunity to present a "reasonably complete" case. *Howell-Hooyman and Hooyman*, 113 Or App 548, 551, 833 P2d 328 (1992).

Here, although the court imposed some limitations on husband's testimony and introduction of evidence, under the circumstances of this case, husband was nonetheless able to make a "reasonably complete" presentation of evidence and had a trial that was fundamentally fair. *Id.* While it is true that husband was not able to testify about his exhibits at trial, he was able to submit his exhibits to the court along with an affidavit in which he identified each exhibit and explained its relevance. The court was clear that it would not admit documents "willy-nilly," but that it would consider them prior to issuing its ruling and that it would consider his statements as to the relevance of each exhibit "the same as if [he] testified about it." The court struck a balance between urging husband along, managing time constraints, and allowing husband a fair opportunity to be heard. Under these circumstances, the trial court's management over the trial did not render the proceedings fundamentally unfair and provided husband with a meaningful opportunity to present a reasonably complete case.

We next consider husband's fourth assignment of error, in which he argues that the trial court abused its discretion in failing to allow him to testify as to the change in value of the family home. We have reviewed the record, and we conclude that it does not support husband's claim of error. Contrary to husband's contention, the trial court in fact allowed him to testify as to his opinion that the family home had a value of $350,000. The trial court did not err as claimed.

## PARENTING TIME

In his second assignment of error, husband challenges the trial court's finding that he sexually abused one of his daughters. Husband contends that the trial court relied on impermissible evidence in making that finding, specifically (1) a hearsay statement by his daughter to which wife testified at trial, and (2) testimony by a witness at an earlier immediate danger hearing that was not part of the evidentiary record for the dissolution trial.

Some factual context is necessary to understand husband's argument. Shortly after filing for divorce, wife filed an *ex parte* motion for an immediate danger order under ORS 107.097.[2] She asked for temporary custody of the parties' four children, without any parenting time for husband. In support of her motion, wife filed a declaration in which she alleged that their daughter, L, had "recently disclosed sexual abuse by [husband]" and that, when she confronted husband about L's disclosures, "he confessed to [wife] that they were true." At a hearing on wife's *ex parte* motion, Renteria, a caseworker from the Oregon Department of Human Services (ODHS), testified. The appellate record does not include a transcript of that hearing, so the specifics of Renteria's testimony are unknown. What the record does show is that husband was not present at the *ex parte* hearing, and that the court ultimately granted the *ex parte* motion. Later, at a different hearing at which he was

---

[2] ORS 107.097(3) provides that "[a] court may enter ex parte a temporary order providing for the custody of, or parenting time with, a child if: *** [t]he party requesting an order is present in court and presents an affidavit or a declaration under penalty of perjury, alleging that the child is in immediate danger; and *** [t]he court finds, based on the facts presented in the party's testimony, the party's affidavit or declaration under penalty of perjury and the testimony of the other party, if the other party is present, that the child is in immediate danger."

present, the court ordered husband to undergo a psychosexual evaluation.

The dissolution trial took place over two years after the immediate danger hearing and nine months after the court ordered husband to undergo a psychosexual evaluation. On the first day of the dissolution trial, wife testified that L had told her that husband was "sexually molesting her." Husband objected on hearsay grounds. The court allowed the testimony for a non-hearsay purpose, as context for the change in the family's circumstances. Wife further testified, without objection, that husband admitted the abuse to her "multiple times" and told her details about it, including where it occurred and how many times. According to wife, husband specifically admitted to her that "he touched [L's] vagina and that he made her touch him." Wife also testified that, following L's disclosure and husband's admissions, husband moved out of the family home and had limited contact with the children. For his part, husband testified that wife was fabricating the abuse allegations, and that she had told him that "she was planning to lie in order to get an advantage in the divorce." Husband also testified that he had not had time to complete a psychosexual evaluation, although he had made initial contact with someone about setting it up.

At the end of the first day of trial, the court set the second day of trial for two months later. The court reminded husband of its order that he get a psychosexual evaluation, stating, "You now have almost two months to get that done. And that order is still in place." However, by the second day of trial, nearly two months later, husband still had not undergone a psychosexual evaluation.

Following trial, the court issued a written opinion in which it found by a preponderance of the evidence that "husband had sexually molested the parties' minor child [L]." The court based that conclusion on "the reliability of information available and the court's assessment of credibility of the respective parties' testimony." More specifically, the court found wife's testimony "to be more credible than" husband's with respect to husband admitting the abuse to wife and their conversations about it; noted that its finding of abuse was consistent with wife's testimony regarding

husband moving to Portland almost immediately after making the admissions and having limited contact with the children thereafter; and identified Renteria, who did not testify during trial but who had testified at the immediate danger hearing two years earlier, "to be the most credible witness as to the facts surrounding the allegations of abuse."

As for parenting time, the trial court denied any parenting time to husband, while noting that he "will be allowed to seek modification of the Judgment and pursue parenting time once he completes a psycho-sexual evaluation and undergoes treatment as recommended." The court noted that it had "ordered a Psycho-sexual evaluation as a prerequisite to awarding any parenting time" to husband and that, "despite having continued trial in this case for a period of four months," husband had failed to complete the evaluation and "appeared for trial * * * asserting his unwillingness to submit to a Psycho-sexual evaluation."

On appeal, husband argues that, in finding that he sexually abused his daughter, as relevant to parenting time, the trial court improperly relied on hearsay statements by L and prior statements by Renteria that were not in evidence.

We first consider preservation. Although the parties mutually assume that husband failed to preserve his claim of error, such that we are limited to plain-error review, *see Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (discussing the availability of plain-error review for unpreserved claims of error), we have an independent obligation to decide preservation—and we conclude otherwise. *See State v. Taylor*, 323 Or App 422, 427 n 3, 523 P3d 696 (2022) ("[W]e have an independent obligation to assess preservation, regardless of what position the parties take."). Husband made a hearsay objection to wife testifying to what L said to her, which preserved his claim of error on that issue. As for Renteria's testimony at the immediate danger hearing, husband had no reason to know that the trial court would rely on that testimony until the court issued its written opinion, at which point husband did not have a practical opportunity to object, so the preservation requirement is waived as to that issue. *See Walker v. State of Oregon*, 256 Or App 697, 699, 302 P3d 469, *rev den*, 354 Or 62 (2013)

("The dictates of preservation do not apply—and, hence, the 'plain error' construct is inapposite—where a party has no practical ability to object to the purported error before entry of judgment."). It follows that we apply our normal standard of review, rather than being limited to plain-error review.

Whether the trial court erred with respect to the challenged testimony is a question of law that we review for legal error. *See U.S. Bank National Assn. v. McCoy*, 290 Or App 525, 532, 415 P3d 1116 (2018) (explaining that whether evidence contains inadmissible hearsay presents a question of law that we review of legal error); *Dept. of Human Services v. T. L.*, 287 Or App 753, 755, 403 P3d 488 (2017) (stating that "[w]hether a juvenile court erred by relying on facts extrinsic to a jurisdictional judgment is a legal question that we review for errors of law" (internal quotation marks omitted)).

We begin with the trial court's reliance on Renteria's testimony from the *ex parte* immediate danger hearing in finding that husband sexually abused L. Husband contends that, because that testimony was not reintroduced at trial, and because he was not present at the *ex parte* hearing to contest it, it was impermissible for the court to rely on it. We agree. Renteria's testimony was not offered or admitted at trial, and, because husband was not present at the immediate danger hearing, he had no opportunity to cross-examine the witness.[3] Husband also had no opportunity to address the testimony, as he did not know that the trial court would rely on it.

Immediate danger hearings are designed to serve urgent, protective functions; they are conducted *ex parte* and do not guarantee the full set of protections typically required at trial—most notably, the opportunity for cross-examination and rebuttal. *See* ORS 107.097 (allowing a court to enter *ex parte* a temporary order providing for the custody of a child if a court finds, based on the evidence

---

[3] The record indicates that, following the *ex parte* immediate danger hearing, the court held a contested hearing later the same year. The appellate record does not include a transcript of either hearing, and it is unclear whether Renteria also testified at the contested hearing or whether husband had an opportunity to cross examine her at that time. However, the parties do not dispute that the trial court relied on Renteria's *ex parte* hearing testimony and that husband was not present at that hearing.

presented, that the child is in immediate danger). They are not intended to serve as substitutes for the presentation of evidence at trial on custody or parenting time. *See L. M. B. v. Cohn*, 298 Or App 782, 786, 450 P3d 50 (2019) (explaining that testimony from an *ex parte* hearing was not part of the record because it was "not entered into evidence"). In the absence of an agreement to incorporate Renteria's prior testimony from the immediate danger hearing, or reintroduction of that evidence, the trial court erred by relying on information outside of the evidentiary record created at trial. Doing so deprived husband the opportunity to confront and contest the evidence that formed the basis of the trial court's dissolution judgment. *See K. M. J. v. Captain*, 281 Or App 360, 364, 384 P3d 532 (2016) (explaining that a trial court "does not have the power wholly to deny the right to cross-examine" and that "to deny that right is legal error" (internal quotation marks omitted)); *see also Howell– Hooyman*, 113 Or App at 550–51 (holding that it was reversible error to deny the husband "the opportunity to complete his cross-examination and to present his case-in-chief").

We cannot say that the error regarding Renteria's statements is harmless, particularly when the trial court described her as "the most credible witness as to the facts surrounding the allegations of abuse." *See State v. Shirley*, 1 Or App 635, 643, 465 P2d 743 (1970) (concluding that it was prejudicial error for the trial court, sitting as fact factfinder, to obtain and read a presentence investigation on his own initiative, in camera, and without the knowledge or consent of the defendant).

Having concluded that the trial court committed reversible error by relying on Renteria's testimony from the immediate danger hearing in finding that husband sexually abused L, we need not address whether the court erred by allowing mother to testify over husband's hearsay objection as to what L told her. When the trial court retries the parenting time issue on remand, it can make a clear record on that issue, to the extent that mother offers the same testimony again.[4]

---

[4] We presume that the trial court will hold a new trial on parenting time on remand. *See State v. McDougal*, 299 Or App 96, 98-103, 449 P3d 919 (2019) (holding that, where the trial court improperly relied on information not in evidence in reaching its verdict in a bench trial, the proper remedy was a new trial,

That leaves husband's third assignment of error, in which husband contends that the trial court erred by failing to make best interests findings for the determination of parenting time. Because the court will be making new findings and a new ruling on parenting time on remand, we need not address that assignment of error in detail other than to observe that, on remand, the trial court must consider all six factors in ORS 107.137(1) in deciding parenting time. *See* ORS 107.137(1) (identifying factors that trial courts "shall" consider in deciding child custody under ORS 107.105); ORS 107.105 (providing for custody and parenting time decisions in marital dissolution judgments); *see also, e.g., Stancliff and Stancliff*, 320 Or App 369, 379, 513 P3d 20 (2022) (recognizing that the trial court "must assess *all* the required statutory considerations *** in determining what serves the children's best interests" (emphasis added)). Although husband's failure to undergo a psychosexual evaluation may be relevant in deciding parenting time—particularly if the court finds that he sexually abused L in the past—the court is required to consider all of the statutory factors in deciding what is in the best interests of the four children.

General judgment reversed as to parenting time; otherwise affirmed; supplemental judgment reversed.

---

and rejecting an argument for a limited remand directing the court to render a new verdict on the existing record). However, we do not foreclose the possibility that the parties could agree to the trial court ruling anew on parenting time on the existing record, or some portion thereof. In that event, the trial court will still be in the position to make a clear record as to whether and how it is relying on L's hearsay statement, such that our addressing the issue in this appeal is unnecessary.